MARGARET K. JONES, PLAINTIFF v. ASHEVILLE RADIOLOGICAL GROUP, P.A., NATHAN WILLIAMS, M.D., TIMOTHY GALLAGHER, M.D., MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA, AND LUCI A. LAYTON, DEFENDANTS

No. COA97-803

(Filed 17 August 1999)

1. **Statute of Limitations— medical malpractice—unauthorized disclosure of records**

Summary judgment was properly granted for some of the defendants based upon the statute of limitations in an action arising from the unauthorized release of mammography films where the last act giving rise to the cause of action occurred more than three years before the claim was filed. In the context of a health care provider's unauthorized disclosure of a patient's confidences, claims of medical malpractice, invasion of privacy, breach of implied contract, and breach of fiduciary duty or confidentiality should all be treated as claims for medical malpractice.

2. **Statute of Limitations— emotional distress—summary judgment**

Summary judgment was properly granted for some of the defendants on an emotional distress claim arising from the unauthorized release of mammography films where the action was not brought within three years of the last act giving rise to the action. Emotional distress is not specifically denominated under any limitation statute and falls under the general three-year provision of N.C.G.S. § 1-52(5).

**3. Unfair Trade Practices— statute of limitations—four years**

Summary judgment was properly granted on an unfair trade practices claim arising from the unauthorized release of mammography records where the claim was not filed within the four-year statute of limitations prescribed for Chapter 75 claims.

**4. Evidence— privileged communications—physician-patient—waiver—filing of malpractice suit—discovery procedures required**

Summary judgment was improperly granted for some defendants in an action arising from the second of two unauthorized disclosures of mammography records. The filing of a medical malpractice suit by a patient against the physician constitutes a limited implied waiver of the physician-patient privilege to the extent the defendant-physician may reveal the confidential information contained in the defendant-physicians's own records to third parties where it is reasonably necessary to defend against the suit. However, in this case the films were not in the possession of a defendant in the underlying malpractice action and could only be disclosed pursuant to statutorily authorized discovery procedures or plaintiff's authorization.

Judge WALKER concurring in part and dissenting in part.

On remand from the Supreme Court of North Carolina in accordance with their opinion, 350 N.C. 654, 517 S.E.2d 380 (1999). Previously heard by this Court on 17 February 1998, 129 N.C. App. 449, 500 S.E.2d 740 (1998), from an appeal by plaintiff from judgments filed 25 February 1997 and 4 March 1997 by Judge Forrest A. Ferrell in Buncombe County Superior Court. The issues addressed on remand are the same as those previously heard by this Court.

*Hyler Lopez & Walton, P.A., by George B. Hyler, Jr. and Robert J. Lopez, for plaintiff-appellant.*

*Dameron & Burgin, by Sharon L. Parker, for defendant-appellees Asheville Radiological Group, P.A. and Timothy Gallagher, M.D.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by James P. Cooney, III and Lara E. Simmons, for defendant-appellees Nathan Williams, M.D., Medical Mutual Insurance Company of North Carolina, and Luci A. Layton.*

JONES v. ASHEVILLE RADIOLOGICAL GRP.

[134 N.C. App. 520 (1999)]

GREENE, Judge.

Margaret K. Jones (plaintiff) was diagnosed with breast cancer in 1989. Her claims in this case arose in connection with a medical malpractice action (the underlying action) she filed against her obstetrician and gynecologist (OB-GYN), Dr. Sherman Morris (Dr. Morris) for his failure to properly diagnose her breast cancer.

At the time the underlying action was filed, Dr. Morris was insured by defendant Medical Mutual Insurance Company of North Carolina (MMIC). Defendant Luci Layton (Layton) is an employee of MMIC and was assigned as a claims adjuster to investigate plaintiff's underlying claims against Dr. Morris.

During an office visit with Dr. Morris in 1987, plaintiff complained of a small, sore, firm lump in her left breast. At that time, Dr. Morris referred plaintiff to defendant Asheville Radiological Group, P.A. (Asheville Radiological) for the purpose of performing a baseline mammogram (the mammogram procedure). The mammogram procedure was performed on 9 March 1988, and Dr. Henri Kieffer prepared a report (the mammography report), which he forwarded to Dr. Morris, that interpreted the mammogram films (the films) and indicated there was "[n]o mammographic evidence of malignancy." During subsequent office visits with Dr. Morris, plaintiff was assured that the lump was only a cyst.

When the lump continued to grow and a second lump formed in her left breast, plaintiff was urged by family members to consult another physician about her condition. Thereafter, on 10 January 1989, plaintiff saw Dr. Peter Gentling (Dr. Gentling) to obtain a second opinion. Dr. Gentling performed a biopsy of plaintiff's left breast and diagnosed the lumps as breast cancer. After determining that the lumps were malignant, Dr. Gentling performed a mastectomy of plaintiff's left breast and found four distinct carcinomas. As a result of her cancer, plaintiff underwent chemotherapy and radiation treatments.

In April of 1989, plaintiff retained an attorney, William Eubanks (Eubanks), to investigate a possible civil action against Dr. Morris for his alleged misdiagnosis of her breast cancer. Subsequently, Eubanks sent a letter to Dr. Morris advising him of the possibility of a suit, which Dr. Morris forwarded to his medical malpractice insurance carrier, MMIC. Thereafter, MMIC's claims adjuster, Layton, set up a claims file and requested plaintiff's medical records from Dr. Morris.

JONES v. ASHEVILLE RADIOLOGICAL GRP.

[134 N.C. App. 520 (1999)]

After reviewing the medical records, which included the mammography report, Layton decided to have the films reviewed by an independent radiologist in order to insure that they had been interpreted correctly. Layton obtained the films from Asheville Radiological on 18 May 1989.

As a result of her displeasure with Dr. Morris's treatment, plaintiff switched to a new OB-GYN physician, Dr. Evelyn Lyles (Dr. Lyles). At Dr. Lyles' request, plaintiff went to Asheville Radiological in June of 1989 to obtain the films. When she arrived, however, plaintiff was informed that they had been checked out by Layton. Plaintiff immediately contacted Eubanks, who explained that Layton was associated with MMIC, but should not have checked out the films without plaintiff's consent. Eubanks assured plaintiff that he would "take care of it."

On 10 July 1990, Eubanks sent a settlement brochure to Layton, with a copy to plaintiff, in which he alleged that Dr. Morris's negligence caused damage to plaintiff in the form of "medical expenses, lost earnings, reconstructive surgery, loss of enjoyment of life for [plaintiff], pain and suffering, and loss of consortium for [plaintiff's husband]."

Plaintiff filed the underlying action against Dr. Morris on 14 November 1990, alleging that as a result of Dr. Morris's negligence, the proper diagnosis and treatment of her cancer was substantially delayed, which reduced her chance of survival and resulted in permanent physical, emotional, and economic injury. The complaint made specific references to the mammogram procedure ordered by Dr. Morris and performed by Asheville Radiological on 9 March 1988.

In December of 1990, MMIC retained James W. Williams (Attorney Williams) to represent Dr. Morris in the underlying action. On 27 December 1990, Attorney Williams served plaintiff with a discovery request for certain documents including, among other things, the medical records for all care and treatment received by plaintiff during the five-year period immediately preceding the institution of the underlying action. In response, plaintiff forwarded a copy of her medical records, which included a copy of the mammography report. Further, prior to her husband's deposition on 16 July 1992, plaintiff agreed to release a copy of her films to Dr. Morris.

On 10 January 1991, Attorney Williams questioned plaintiff at her deposition regarding Dr. Morris having ordered the mammogram pro-

cedure; the condition of her breast at the time of the mammogram procedure; the questionnaire she completed at Asheville Radiological prior to the mammogram procedure; and the mammography report itself.

On 14 June 1991, with plaintiff present, Dr. Morris was deposed by plaintiff's counsel regarding the mammogram procedure and the mammography report that interpreted the films.

Thereafter, Dr. Nathan Williams (Dr. Williams), an expert in breast disease, was retained by defendant to offer an opinion as to the standard of care practiced by Dr. Morris. Dr. Williams was provided with a complete copy of plaintiff's medical history. On 1 July 1992, with plaintiff present, Dr. Williams was deposed by plaintiff's attorney regarding his opinion as to Dr. Morris's treatment of plaintiff based on his review of her medical records, including the mammography report.

After his deposition in the underlying action, but before trial, Dr. Williams determined that in addition to reviewing the mammography report, he needed to review the films in order to be prepared to testify at trial. On 16 July 1992, Dr. Williams obtained the films from Memorial Mission Hospital (the Hospital) and briefly reviewed them before returning them to the Hospital's radiology department. It is unclear from the record how the films were initially transferred from Asheville Radiological to the Hospital.

Thereafter, pursuant to a previous agreement with Dr. Morris to provide him with a copy of her films, plaintiff called Asheville Radiological to arrange picking up the films so that she could take them to her husband's deposition later that day. At that time, plaintiff was advised that Dr. Timothy Gallagher (Dr. Gallagher), a physician employed by Asheville Radiological, had released the films to Dr. Williams. Plaintiff advised Asheville Radiological that Dr. Williams was not her treating physician and the films should not have been released to him. Asheville Radiological then retrieved the films from Dr. Williams.

On 25 August 1992, plaintiff discharged Eubanks and retained her present attorney. At trial, plaintiff, Dr. Morris, and Dr. Williams all testified in detail about the circumstances surrounding Dr. Morris's alleged failure to diagnose plaintiff's breast cancer properly, including the mammogram procedure performed by Asheville Radiological in March of 1988. Plaintiff did not object to any testimony regarding the mammogram procedure, and introduced the mammography

report as part of her exhibits. The jury returned a verdict in favor of Dr. Morris in the underlying action, and plaintiff appealed to this Court, which found no error.

On 17 July 1995, plaintiff filed this action, in which she alleged claims stemming from both the May 1989 and July 1992 unauthorized releases of her mammography films. Plaintiff alleged claims of medical malpractice and breach of fiduciary duty/confidentiality against Asheville Radiological and Dr. Gallagher; breach of implied contract against Asheville Radiological; unfair and deceptive trade practices against MMIC; and invasion of privacy and intentional infliction of emotional distress (emotional distress) against all defendants. Following a hearing, the trial court granted defendants' motions for summary judgment as to all claims.

---

The dispositive issues are whether: (I) plaintiff's claims against Asheville Radiological, MMIC, and Layton based on the unauthorized release of her films in May 1989 are barred by the applicable statutes of limitation; and (II) genuine issues of material fact exist as to whether plaintiff waived the physician-patient privilege with regards to Asheville Radiological and Dr. Gallagher's unauthorized release of her films to Dr. Williams in July 1992.

At the outset, we first note that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1990); *Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 300, 337 S.E.2d 644, 647 (1985). In reviewing a trial court's granting of summary judgment, we must view the evidence in the light most favorable to the party opposing summary judgment. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 69 N.C. App. 505, 507, 317 S.E.2d 41, 42 (1984), *aff'd*, 313 N.C. 488, 329 S.E.2d 350 (1985). Further, "[a] defending party is entitled to summary judgment if he can show that the claimant cannot prove the existence of an essential element of [her] claim or cannot surmount an affirmative defense which would bar the claim." *Little v. National Service Industries, Inc.*, 79 N.C. App. 688, 690, 340 S.E.2d 510, 512 (1986); *see also Ballinger v. Secretary of Revenue*, 59 N.C. App. 508, 512, 296 S.E.2d 836, 839 (1982) ("[W]hen defendants establish a complete defense to plaintiff's claim, they are entitled to the quick and final disposition of that claim which summary judgment provides."), *cert. denied*, 307 N.C. 576, 299 S.E.2d 645 (1983).

I

*Claims Arising from May 1989 Release*

**[1]** Plaintiff contends the trial court erred by granting summary judgment as to her claims against Asheville Radiological, MMIC, and Layton based on the unauthorized release of her mammography films in May 1989. We disagree.

When a defendant properly pleads the statute of limitations as a defense, the burden shifts to the plaintiff to show that he instituted the action within the prescribed time period. *Pembee,* 69 N.C. App. at 507, 317 S.E.2d at 42. Further, when the facts are not in conflict, a question of law exists for which summary judgment may be appropriate. *Id.* at 508, 317 S.E.2d at 43. Here, since plaintiff has asserted multiple claims which are governed by different statutes of limitation, we will address each claim separately.

This Court has held that in the context of a health care provider's unauthorized disclosure of a patient's confidences, claims of medical malpractice, invasion of privacy, breach of implied contract, and breach of fiduciary duty/confidentiality should all be treated as claims for medical malpractice. *Watts v. Cumberland County Hosp. System,* 75 N.C. App. 1, 9, 330 S.E.2d 242, 248-249, *disc. review denied,* 314 N.C. 548, 335 S.E.2d 27 (1985), *rev'd in part on other grounds,* 317 N.C. 321, 345 S.E.2d 201 (1986). As such, N.C. Gen. Stat. § 1-15(c) provides for a three-year statute of limitations period and further states in pertinent part that "a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action." N.C.G.S. § 1-15(c) (1996).

In this case, it is uncontroverted that the last act giving rise to plaintiff's cause of action against Asheville Radiological, MMIC, and Layton occurred in June of 1989 when plaintiff was notified that Layton had obtained plaintiff's films from Asheville Radiological. Since plaintiff filed her claim for medical malpractice more than three years after June of 1989, the trial court thus did not err by granting summary judgment for MMIC and Layton, as well as for Asheville Radiological for its release of the films in June of 1989.

**[2]** Similarly, "[b]ecause it is not specifically denominated under any limitation statute, a cause of action for emotional distress falls under the general three-year provision of G.S. 1-52(5)." *King v. Cape Fear*

*Mem. Hosp.*, 96 N.C. App. 338, 341, 385 S.E.2d 812, 814 (1989), *disc. review denied*, 326 N.C. 265, 389 S.E.2d 114 (1990); *see also* N.C.G.S. § 1-52(5) (1996). As such, the trial court did not err in granting summary judgment for Asheville Radiological, MMIC, and Layton on plaintiff's claim for emotional distress since it was not brought within the three-year limitations period, which began running in June of 1989.

[3] Finally, a claim for unfair and deceptive trade practices pursuant to Chapter 75 of the North Carolina General Statutes is subject to a four-year statute of limitations. *Hinson v. United Financial Services*, 123 N.C. App. 469, 474, 473 S.E.2d 382, 386, *disc. review denied*, 344 N.C. 630, 477 S.E.2d 39 (1996); *see also* N.C.G.S. § 75-16.2 (1994). Further, "a cause of action pursuant to § 75-16 accrues when the violation occurs." *Hinson*, 123 N.C. App. at 475, 473 S.E.2d at 387. Here, plaintiff's complaint alleges that MMIC "engaged in unfair or deceptive practices affecting commerce . . . by knowingly requesting, obtaining the release of, and reviewing the Plaintiff's confidential [films] without her authorization or consent." As previously stated, this cause of action accrued in June of 1989, when plaintiff became aware that Layton requested and received a copy of plaintiff's films. The trial court, therefore, did not err by granting MMIC's motion for summary judgment since plaintiff's claim for unfair and deceptive trade practices was not filed within the four-year statutorily prescribed period.

II

*Claims Arising from July 1992 Release*

[4] Plaintiff also contends the trial court erred by granting summary judgment as to her claims against Asheville Radiological, Dr. Gallagher, and Dr. Williams for the unauthorized release of her films in July 1992. Plaintiff avers this unauthorized release violated the physician-patient privilege conferred by N.C. Gen. Stat. § 8-53.

This Court has recognized a claim of medical malpractice based on the unauthorized disclosure of confidential information, the basis of plaintiff's claims in this action. *Watts*, 75 N.C. App. at 9, 330 S.E.2d at 249; *see* N.C.G.S. § 8-53 (1986) ("Confidential information obtained in medical records shall be furnished only on the authorization of the patient."). The filing of a medical malpractice suit by a patient against her physician, however, constitutes a limited implied waiver of the physician-patient privilege to the extent the defendant-physician may

reveal the patient's confidential information *contained in the defendant-physician's own records* to third parties where it is reasonably necessary to defend against the suit. *See, e.g., Acosta v. Richter*, 671 So. 2d 149, 156 (Fla. 1996) ("[A] defendant-physician is free . . . to discuss his knowledge of the patient in order to properly defend himself."); *Heller v. Norcal Mut. Ins. Co.*, 876 P.2d 999, 1003 (Cal.) (construing statutory physician-patient privilege to allow a doctor who is "a potential litigant in a malpractice action . . . to discuss with [his insurance provider] plaintiff's medical condition"), *cert. denied*, 513 U.S. 1059, 130 L. Ed. 2d 602 (1994); *Mutter v. Wood*, 744 S.W.2d 600, 601 (Tex. 1988) (waiving privilege completely as to records of defendant-doctors); *Otto v. Miami Valley Hosp. Soc'y*, 266 N.E.2d 270, 272 (Ohio 1971) ("[I]n an action against a physician for malpractice the doctor may disclose communications."); *cf.* N.C.R. Professional Conduct 1.6(d)(6) (permitting lawyers to disclose a client's confidential information "to the extent the lawyer reasonably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client; . . . or to respond to allegations in any proceeding concerning the lawyer's representation of the client").

In this case, plaintiff's medical malpractice suit against Dr. Morris constituted an implied waiver of her physician-patient privilege. Dr. Morris, as a defendant-physician in that suit, therefore was free to disclose to third parties *his own records* containing plaintiff's confidential information, to the extent he reasonably believed necessary in defending against plaintiff's action. In addition, plaintiff's filing of the underlying action against Dr. Morris *combined with* her subsequent conduct during the course of the medical malpractice action impliedly waived her physician-patient privilege as to records relating to plaintiff's breast cancer which were *not* in Dr. Morris's possession. It is the effect of plaintiff's waiver as to these records (*i.e.*, plaintiff's mammography films prepared by and in the possession of Asheville Radiological), which is at issue in this case.

The confidential nature of the physician-patient relationship extends beyond the time of the waiver by the patient, *Crist v. Moffatt*, 326 N.C. 326, 334, 389 S.E.2d 41, 46 (1990), and a defendant "must utilize the statutorily recognized methods of discovery enumerated in N.C.G.S. § 1A-1, Rule 26" to obtain a plaintiff's medical information, *id.* at 336, 389 S.E.2d at 47; *see also* N.C.G.S. ch. 1A, art. 5 (1990). Requiring defendants to abide by formal discovery rules in obtaining medical records from a non-party physician, even where

the patient has waived the physician-patient privilege, protects the patient from disclosure of aspects of her mental and physical health which may be irrelevant or otherwise inadmissible in court. *Wenninger v. Muesing*, 240 N.W.2d 333, 336-37 (Minn. 1976). It also protects the medical profession against unnecessary harassment and charges of professional misconduct. *See Crist*, 326 N.C. at 335, 389 S.E.2d at 47.

In this case, Asheville Radiological and Dr. Gallagher, neither of whom were defendants in the medical malpractice action against Dr. Morris, disclosed plaintiff's mammography films to Dr. Williams. Although the films were related to plaintiff's malpractice action, the films were not in the possession of a defendant to that action. It follows that, even after plaintiff's waiver, the films only could be disclosed pursuant to statutorily authorized discovery procedures or pursuant to plaintiff's authorization.

Plaintiff asserts she did not authorize Asheville Radiological or Dr. Gallagher to release her films to Dr. Williams, nor did Dr. Williams obtain the films pursuant to formal discovery procedures. We may assume, for the sake of argument, that once Dr. Morris had legal possession of plaintiff's mammography films (either pursuant to court-ordered discovery, plaintiff's delivery of the films to Dr. Morris, or plaintiff's authorization to Asheville Radiological to release the films to him), Dr. Morris could then have provided Dr. Williams with the films as a reasonably necessary step in defending himself against plaintiff's lawsuit; however, this intermediate step was not taken. Plaintiff, therefore, has asserted valid claims against Asheville Radiological, Dr. Gallagher, and Dr. Williams for the disclosure of her mammography films in July of 1992. Accordingly, the entry of summary judgment on the claims arising from the 1992 release was improper and must be reversed.

In summary, although summary judgment was proper as to all of plaintiff's claims stemming from the May 1989 release of her mammography films, genuine issues of material fact exist as to plaintiff's claims arising from the July 1992 unauthorized release against Asheville Radiological, Dr. Gallagher, and Dr. Williams, and this case therefore must be remanded on those July 1992 claims.

Affirmed in part, reversed in part, and remanded.

Judge TIMMONS-GOODSON concurs.

Judge WALKER concurs in part and dissents in part.

Judge WALKER concurring in part and dissenting in part.

I concur in the majority opinion in that plaintiff's claims against Asheville Radiological, MMIC, and Layton, based on the unauthorized release of her films in 1989, are barred by the applicable statutes of limitation.

I respectfully dissent from the majority opinion which holds there are genuine issues of material fact as to plaintiff's claims arising from the July 1992 release of her films.

No physician-patient privilege existed at common law; therefore, the statutory privilege is to be strictly construed. *Sims v. Insurance Co.*, 257 N.C. 32, 36-37, 125 S.E.2d 326, 329-330 (1962). The patient has the burden of establishing the existence of the privilege and objecting to the discovery of such privileged information in the first instance. *Adams v. Lovette*, 105 N.C. App. 23, 28, 411 S.E.2d 620, 624, *affirmed*, 332 N.C. 659, 422 S.E.2d 575 (1992). Further, this privilege is not absolute and may be waived by the patient's conduct. *Id.* at 28-29, 411 S.E.2d at 624; *see also Cates v. Wilson*, 321 N.C. at 14, 361 S.E.2d at 742. In addressing the issue of waiver, our Supreme Court has held:

When . . . the patient breaks the fiduciary relationship with the physician by revealing, or permitting revelation of, the substance of the information transmitted to the physician, the patient has, in effect, determined it is no longer important that the confidences which the privilege protects continue to be protected. Having taken this position, the plaintiff may not silence the physician as to the matters otherwise protected by the privilege.

*Cates v. Wilson*, 321 N.C. at 15, 361 S.E.2d at 742-743.

Having determined that a patient may waive the physician-patient privilege by "break[ing] the fiduciary relationship with the physician by revealing, or permitting revelation of, the substance of the information transmitted to the physician," it must now be determined when a patient effectively waives the privilege, and the extent to which the privilege is waived. *Id.*; *see also Collins v. Bair*, 268 N.E.2d at 99.

In *Cates v. Wilson, supra,* our Supreme Court announced that the facts and circumstances of a particular case determine whether a

patient's conduct constitutes a waiver of the privilege. *Id.* at 14, 361
S.E.2d at 742; *see also Crist v. Moffatt*, 326 N.C. 326, 331, 389 S.E.2d
41, 44 (1990). The Court then elaborated on the general rule by stat-
ing that a waiver of the privilege may occur either when: (1) a plain-
tiff calls the treating physician as a witness and examines him as to
her physical condition; (2) a plaintiff fails to object when the oppos-
ing party calls the treating physician to testify; or (3) a plaintiff testi-
fies to the communication between her and the physician. *Id.* at 14,
361 S.E.2d at 742. Further, the Court observed that the privilege could
also be waived when the patient "voluntarily goes into detail regard-
ing the nature of [her] injuries and either testifies to what the physi-
cian did or said while in attendance." *Id.* (Citation omitted).

In his concurring opinion in *Cates*, Justice (now Chief Justice)
Mitchell stated it was time for the Court to recognize an exception to
the physician-patient privilege which has already been adopted by the
majority of jurisdictions, the patient-litigant exception. *Id.* at 17, 361
S.E.2d at 744 (Mitchell, J., concurring). That exception recognizes
that when a patient files a medical malpractice action against her
treating physician in which an essential part of the claim is the exist-
ence of a physical ailment, there should be a waiver of the privilege
for all communications causally or historically related to that ail-
ment. *Id.* However, the Court concluded that a waiver had occurred
under the facts and circumstances of the case and therefore declined
to adopt this exception.

Here, when plaintiff filed the underlying action, she directly put
her medical condition at the time of the mammogram procedure at
issue. Thereafter, plaintiff's conduct during the course of the under-
lying action clearly establishes a waiver of her physician-patient priv-
ilege. During discovery, plaintiff agreed to provide Dr. Morris with
copies of her medical records pertaining to her treatment for breast
cancer, including the mammography report and the films, which are
an integral part of the mammography report; plaintiff testified in
detail during her deposition about the circumstances surrounding the
mammogram procedure; plaintiff deposed Dr. Morris in detail about
the mammogram procedure and the mammography report; and plain-
tiff was present when Dr. Williams was examined during his deposi-
tion about Dr. Morris' treatment of plaintiff based on Dr. Williams'
review of the medical records, including the mammography report.
Thereafter, during the trial of the underlying action, plaintiff testified
as she did in her deposition regarding her medical records and the
mammogram procedure, and plaintiff did not object to the testi-

monies of Dr. Morris and Dr. Williams regarding plaintiff's medical records and the mammogram procedure. All of these facts and circumstances lead to the conclusion that plaintiff never manifested a desire to preserve her physician-patient privilege and thus has waived such privilege as to Dr. Morris.

However, even when a plaintiff waives the physician-patient privilege, "the question remains by what procedures and subject to what controls the exchange of information shall proceed." *Crist v. Moffatt*, 326 N.C. at 334, 389 S.E.2d at 46. Here, plaintiff contends that while she "should not be able to hide behind the privilege and use it as a sword," there should be some control over the discovery process.

As our Supreme Court has recognized, even when a plaintiff waives the privilege, defendants must still utilize the formal discovery methods provided by the North Carolina Rules of Civil Procedure unless the parties consent to an informal discovery method. *Id.* at 334, 389 S.E.2d at 46.

Here, Dr. Morris ordered the mammogram procedure in connection with his evaluation and treatment of plaintiff. When plaintiff brought the underlying action against Dr. Morris for his alleged failure to properly diagnose her breast cancer, she directly put at issue her condition, thus allowing Dr. Morris to obtain any of her medical records that are relevant to her claim during the discovery process. Thereafter, when plaintiff provided Dr. Morris with copies of her medical records during discovery, and likewise agreed to provide him with her films in connection with her husband's deposition on 16 July 1992, no further discovery was necessary in order for Dr. Morris to permit Dr. Williams, his expert witness, to review these medical records and films. Therefore, I find that the waiver of the privilege as to Dr. Morris precludes any claims against Asheville Radiology, Dr. Gallagher and Dr. Williams.