**Pamela J. FAIRCLOTH, individually and on behalf of other similarly situated individuals, Plaintiff,**

**v.**

**NATIONAL HOME LOAN CORPORATION; Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust 1997–1; the Mego Mortgage Home Loan Owner Trust 1997–2; Financial Asset Securities Corpora-**

tion Mego Mortgage Home Loan Owner Trust, Series 1997–3; Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust, Series 1997–4; Sovereign Bank; U.S. Bank National Association, N.D.; Firstplus Home Loan Trust 1996–2; Firstplus Home Loan Trust 1996–3; Firstplus Home Loan Owner Trust 1996–4; Firstplus Home Loan Owner Trust 1997–1; Firstplus Home Loan Owner Trust 1997–2; Firstplus Home Loan Owner Trust 1997–3; Firstplus Home Loan Owner Trust 1997–4; Firstplus Home Loan Owner Trust 1998–1; Firstplus Home Loan Owner Trust 1998–2; Firstplus Home Loan Owner Trust 1998–3; Firstplus Home Loan Owner Trust 1998–4; Firstplus Home Loan Owner Trust 1998–5; German American Capital Corporation; Paine Webber Real Estate Securities, Inc.; Ace Securities Corporate Home Loan Trust 1999 A; Real Time Resolutions, Inc.; PSB Lending Corporation; Indymac Mortgage Holdings f/k/a INMC Mortgage Corp.; Paladian Financial, Inc.; National Consumers Services Corp., LLC; GRMT Mortgage Loan Trust 2001–1; and U.S. Bank National Association, Defendants.

No. 1:01CV01140.

United States District Court,
M.D. North Carolina.

March 17, 2003.

A. Hoyt Rowell, III, Daniel Myers, Kevin Oufnac, Fred Thompson, Ness, Motley, Loadholt, Richardson & Poole, Mt. Pleasant, SC, Gary K. Shipman, William Grainger Wright, Sr., Shipman & Hodges, LLP, Wilmington, NC, Eric G. Calhoun, Lawson & Fields, P.C., Dallas, TX, for Plaintiff.

Donald Hugh Tucker, Jr., Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, for National Home Loan Corp.

Hada V. Haulsee, Ronald R. Davis, Womble, Carlyle, Sandridge & Rice, Winston-Salem, NC, Jason Everett Moss, Wyatt, Early, Harrris & Wheeler, L.L.P., High Point, NC, for Financial Asset Securities Corp Mego Mortgage Home Loan Owner.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Plaintiff Pamela J. Faircloth's Motion to Remand [Document # 20]. Also before the Court are Motions to Dismiss Plaintiff's original Complaint submitted by Defendant PSB Lending Corporation ("PSB Lending") [Document # 26], Defendant Sovereign Bank [Document # 28], Defendant UBS Warburg Real Estate Securities, Inc., f/k/a Paine Webber Real Estate Securities, Inc. ("UBS Warburg") [Document # 30], Defendants Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust 1997–1, et al. ("Trust Defendants") [Document # 32], Defendant Indymac Mortgage Holdings, f/k/a INMC Mortgage Corp. ("Indymac") [Document # 34], Defendant National Home Loan ("National") [Document # 41], and Defendant Paladin Financial, Inc. ("Paladin") [Document # 46]. Additionally, Defendants Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust 1997–1, et al., have filed a Motion to Dismiss the Claims Asserted in Plaintiff's Amended Complaint [Document # 82]. Finally, counsel for Defendant National Home Loan Corporation has filed a Motion to Withdraw as Counsel [Document # 91]. For the reasons stated herein, Plaintiff's Motion to Remand is DENIED, all outstanding Motions to Dismiss are GRANTED, and counsel for Defendant National Home Loan Corp.'s Motion to Withdraw as Counsel is DISMISSED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Pamela J. Faircloth ("Plaintiff") filed this action in the General Court of

Justice Superior Court Division of Durham County, North Carolina on November 26, 2001, against the following named Defendants: "National Home Loan Corporation;[1] Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust 1997–1; The Mego Mortgage Home Loan Owner Trust 1997–2; Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust, Series 1997–3; Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust, Series 1997–4; Sovereign Bank; U.S. Bank National Association, ND.; Firstplus Home Loan Trust 1996–2; Firstplus Home Loan Owner Trust 1996–3; Firstplus Home Loan Owner Trust 1996–4[;] Firstplus Home Loan Owner Trust 1997–1; Firstplus Home Loan Owner Trust 1997–2; Firstplus Home Loan Owner Trust 1997–3; Firstplus Home Loan Owner Trust 1997–4; Firstplus Home Loan Owner Trust 1998–1; Firstplus Home Loan Owner Trust 1998–2; Firstplus Home Loan Owner Trust 1998–3; Firstplus Home Loan Owner Trust 1998–4; Firstplus Home Loan Owner [Trust] 1998–5; German American Capital Corporation; Paine Webber Real Estate Securities, Inc.; Ace Securities Corporate Home Loan Trust 1999 A; Real Time Resolutions, Inc.; PSB Lending Corporation; Indymac Mortgage Holdings, f/k/a INMC Mortgage Corp.; Paladian[2] Financial, Inc.; National Consumers Services Corp., LLC; GRMT Mortgage Loan Trust 2001–1; and U.S. Bank National Association . . ." (sic) ("Defendants"). (Compl. at 1–2.)

Plaintiff brings suit individually and on behalf of other unnamed, similarly situated class members[3] who are North Carolina residents, and who all received secondary mortgage loans from National secured by real property located in North Carolina. (Compl.¶¶ 1–2.) On July 8, 1997, National loaned Plaintiff a principal amount of $26,450 at an interest rate of 13.99% with a disclosed Annual Percentage Rate of 15.952% and a term of 300 months. (Compl.¶ 47.) Plaintiff's original Complaint, filed on November 26, 2001, alleges that the second mortgage loans she and Class Members received contained illegal interest rates,[4] costs, and fees. (Compl.¶¶ 1–2.) Plaintiff also alleges that National engaged in unfair and deceptive acts in marketing the second mortgage loans. (Compl.¶ 3.) Aside from National,

---

1. As discussed below, National Home Loan Corporation was the originator of Plaintiff's loan, while each of the remaining Defendants is named "because, upon information and belief, it is a holder of promissory notes related to the mortgage loans made by NATIONAL to Plaintiff and Class Members." (Compl.¶ 8.)

2. In various pleadings, the parties have also spelled this Defendant's name "Paladin." It is unclear to the Court which is the correct spelling. Because Defendant uses the "Paladin" spelling, rather than "Paladian," in its Motion to Dismiss [Document # 46], the Court will use "Paladin."

3. The Court notes that this case has not yet received class certification. However, in considering the propriety of a removal, the district court generally "must restrict itself to 'the plaintiff's pleading, which controls.'"

*Griffin v. Ford Consumer Fin. Co.*, 812 F.Supp. 614, 616 (W.D.N.C.1993) (quoting *Am. Fire and Cas. Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951)). Therefore, because Plaintiff characterizes the case as a class action, the Court will regard it as such for purposes of deciding the threshold issue raised by Plaintiff's Motion to Remand.

4. Plaintiff's Amended Complaint, filed in this Court on July 25, 2002, abandons all allegations of charging or receiving prohibited or usurious interest rates, and likewise abandons the accompanying damages requests for twice the total of all interest and fees paid and to be relieved of the obligation to make further interest payments on the note. (*Compare* Compl. ¶¶ 2, 43–45, 56, 67–73, *with* Am. Compl. ¶¶ 2, 43–45, 56, 67–73.) Plaintiff's Motion to file the Amended Complaint was unopposed and was granted by Magistrate Judge Dixon on July 9, 2002.

Plaintiff states that each Defendant is named because it is the originator or holder of promissory notes related to the mortgage loans made by National to Plaintiff and Class Members. (Compl.¶¶ 2, 10–37.) Plaintiff asserts two claims for relief against all Defendants. First, Plaintiff alleges that Defendants violated North Carolina's Interest Statutes, N.C. Gen.Stat. § 24–1 *et seq.*, by charging Plaintiff usurious costs and fees. (Compl.¶¶ 67–73.) Second, Plaintiff contends that Defendants violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen.Stat. § 75–1 *et seq.*, by engaging in unfair and deceptive marketing practices and by charging usurious costs and fees. (Compl.¶¶ 74–86.)

On December 31, 2001, all Defendants removed the action to this Court based on assertions of diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367.[5] Plaintiff is a citizen of North Carolina and Defendants are corporations and trusts whose places of incorporation and/or principal places of business are outside of North Carolina. (Compl. ¶ 2; Mot. to Remand ¶¶ 5(a), 5(f).) Plaintiff contends, however, that the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332, and consequently, filed a Motion to Remand on January 28, 2002. (Mot. to Remand ¶ 5.) Thereafter, Defendants filed their Motions to Dismiss in which all Defendants allege that Plaintiff failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). Defendants Indymac and Paladin further assert that this Court lacks subject matter jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(1). The arguments raised in each of these motions are substantially similar and will be dealt with by the Court together.

## II. DISCUSSION

### A. Motion to Remand

■ As an initial matter, the Court must address Plaintiff's argument, made in her Motion to Remand, that Defendants improperly removed this action. Defendants removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a North Carolina resident while Defendants are corporations whose principal places of incorporation and/or principal places of business are outside of North Carolina. Therefore, the question for purposes of diversity jurisdiction is whether the "matter in controversy exceeds $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

The Court recently addressed this identical issue in *Dash v. FirstPlus Home Loan*, 1:01CV00923 in a Memorandum Opinion and Order and Judgment filed on March 6, 2003. Notably, the plaintiffs in *Dash* were represented by the same counsel as Plaintiff is in the instant matter. In *Dash*, as in the present case, the plaintiffs, on behalf of themselves and other potential class members, brought suit against a group of possible assignees of their secondary mortgage loan alleging that the defendants charged them usurious fees and interest rates and engaged in unfair and deceptive trade practices in connection with the closing of their loan.[6] After the defendants removed the case to this Court, the plaintiffs filed a Motion to Remand

---

**5.** The Complaint asserts no federal questions, and Defendants do not contend the Complaint alleges any federal questions.

**6.** The Court notes that in the instant case one of Defendants, Financial Asset Securities

Corp. Mego Mortgage Home Loan Owner Trust, Series 1997–4, admits that it is the holder of Plaintiff's loan. Moreover, the originator of the loan, National Home Loan Corp., is also named as a defendant in the instant matter.

alleging that the amount in controversy did not exceed the statutory requirement of $75,000. Because of the similarity between the facts of *Dash* and the facts of the present case, and in the interest of judicial economy, the Court specifically adopts the reasoning regarding the denial of Plaintiff's Motion to Remand set forth in *Dash v. FirstPlus Home Loan,* 1:01CV00923. For the reasons stated in *Dash,* namely that Defendants have demonstrated by a preponderance of the evidence that the damages requested on the face of Plaintiff's Complaint ensure that the value of the case well exceeds the requisite amount in controversy, and Plaintiff has failed to demonstrate otherwise. Consequently, Plaintiff's Motion to Remand is DENIED.

## B. Motions to Dismiss

■ Because Plaintiff's Complaint satisfies the requirements of diversity jurisdiction[7], the Court will now address Defendants' Motions to Dismiss, some of which were filed by groups of Defendants and others of which were filed by individual Defendants. Two basic arguments run common to nearly all the Motions to Dismiss: 1) that Plaintiff lacks standing to pursue her claim against many of Defendants because they are not the actual holders of her mortgage; and 2) that Plaintiff cannot state a claim for relief under the statutes which she seeks to enforce.[8] The Court will address each argument, and the Defendants to which they apply, in turn.

### 1. Standards of Review

There are two ways in which to present a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Defendants may contend either that the complaint fails to allege facts upon which subject-matter jurisdiction can be based, or that the jurisdictional facts alleged in the complaint are untrue. *Id.* If, as in the instant case, defendants raise the former argument, then the plaintiffs enjoy procedural safeguards similar to those they would enjoy when opposing a Rule 12(b)(6) motion. *Id.* In such situations, the court accepts the plaintiffs allegations as true, construing them most favorably to the plaintiffs, and relies solely on the plead-

---

**7.** As mentioned in footnote four, Plaintiff has filed an unopposed Amended Complaint which seeks essentially to recover only "fees and costs" which she alleges were illegal. Thus, the bulk of the figures used to calculate the amount in controversy, that is, "[t]wice the total of all interest paid [which] amounts to $31,697.46;" and 2) relief from "any further obligation to pay interest on the note," which amounts to $53,158.27, are no longer in controversy. (Resp. Br. in Opp'n to Pl.'s Mot. to Remand at 8–10.) Nonetheless, the Court will retain jurisdiction because the amount in controversy is determined based on a plaintiff's complaint at the time the notice of removal is filed and "a plaintiff following removal cannot destroy federal jurisdiction simply by amending a complaint that initially satisfied the monetary floor." *Angus v. Shiley,* 989 F.2d 142, 145 (3d Cir.1993); *see also Gould v. Artisoft, Inc.,* 1 F.3d 544, 547 (7th Cir.1993) (looking to the facts that existed at the time of removal to determine juris-

diction). However, for purposes of the various motions to dismiss, however, the Court will analyze Defendants' arguments as they apply to the Amended Complaint since it is the document which now sets forth Plaintiff's claims.

**8.** In a renewed Motion to Dismiss directed towards Plaintiff's Amended Complaint, various Defendants also raise a third argument in which they contend the Court lacks personal jurisdiction. Since the Court will grant all outstanding motions to dismiss based on the two grounds just mentioned, the Court finds it need not address this alternative argument but notes that defendants in similar cases have succeeded on such an argument. *See Pilcher v. Direct Equity Lending,* 189 F.Supp.2d 1198 (D.Kan.2002); *Mull v. Alliance Mort. Banking Corp.,* 219 F.Supp.2d 895 (W.D.Tenn.2002); *Frazier v. Preferred Credit,* No. 01–2714 GB, 2002 WL 31039856 (W.D. Tenn. Jul 31, 2002).

ings, disregarding affidavits or other materials. *Id.; Higgins v. United States,* 894 F.Supp. 232, 234 (M.D.N.C.1995). The defendants should prevail only if entitled to do so as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).

When deciding a Rule 12(b)(6) motion, the Court reviews the plaintiff's complaint using a relaxed standard "accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). Accordingly, dismissal is only appropriate when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." Shepard's, *Motions in Federal Court,* § 5.123 (2d ed.1991). If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984). In light of this standard, the Court next turns to whether dismissal of Plaintiff's claims is proper.

### 2. Subject Matter Jurisdiction

■ All Defendants, except for National[9] and Financial Asset Securities Corporation Mego Mortgage Home Loan Owner Trust 1997–4 ("Mego Trust 1997–4")[10], argue that Plaintiff's Complaint on its face demonstrates that the Court lacks subject matter jurisdiction in this case. The specific basis for this argument is that Plaintiff has no standing to sue Defendants. Plaintiff, however, asserts that she satisfies the requirements of standing on two grounds. First, Plaintiff maintains that because there is a juridical link among Plaintiff and Class Members, and Defendants, she has satisfied the requirements of standing. Second, Plaintiff relies on the Home Ownership Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1641, Pub.L. No. 103–325 (codified as amended at 15 U.S.C. §§ 1602(aa), 1639, and 1641(d)), as a basis for standing. Specifically, as to the second argument, Plaintiff contends that because Defendants are assignees of secondary mortgage loans, HOEPA permits Plaintiff to bring suit against them as though Defendants are the loan originators.

Again, because of the similarities presented in the instant matter, the Court adopts the reasoning set forth regarding subject matter jurisdiction in *Dash v. FirstPlus Home Loan,* 1:01CV00923.

---

**9.** Defendant National does not raise a standing argument, presumably because it was the originator of Plaintiff's loan. National relies instead on a statute of limitations argument and specific failure to state a claim arguments that will be discussed below. Accordingly, none of the Court's analysis of standing applies to National.

**10.** Notably, Defendant Financial Asset Securities Corportation Mego Mortgage Home Loan Owner Trust 1997–4 ("Mego Trust 1997–4") acknowledges that it owns Plaintiff's note and therefore does not argue that standing is a ground for dismissal. (Br. in Supp. of Defs.' Mot. to Dismiss at 5 n.1.) Instead, Defendant Mego Trust 1997–4 relies on the other grounds discussed herein, namely that the statute of limitations bars Plaintiff's claims and that Plaintiff fails to state a claim under the substantive language of the statutes. (Br. in Supp. of Mot. to Dismiss the Claims Asserted in the Am. Compl. at 3.) Accordingly, none of the Court's analysis of standing applies to Mego Trust 1997–4.

Specifically, since the named Plaintiff can only identify Defendant Mego Trust 1997–4 as the current holder of her loan and Defendant National as the originator of her loan, she fails to establish standing with respect to all other Defendants. Plaintiff's class allegations, juridical link argument, and reliance on HOEPA, therefore, do not and cannot establish standing against any Defendant other than National and Mego Trust 1997–4. Accordingly, because the Court lacks subject matter jurisdiction over Plaintiff's claims against all Defendants except National and Mego Trust 1997–4, Defendants' Motions to Dismiss on the basis of standing are GRANTED with respect to all Defendants except for National and Mego Trust 1997–4.

### 3. Substantive Claims

Standing is a threshold issue and, having found an absence of standing against many of the Defendants, the Court would ordinarily be without jurisdiction to consider the issues raised in Defendants' Motions to

Dismiss that are directed towards Plaintiff's substantive claims. However, as noted, Plaintiff does have standing against two Defendants, National and Mego Trust 1997–4. Accordingly, the Court will examine the merit of Plaintiff's claims against National and Mego Trust 1997–4 (hereinafter collectively referred to as "Defendants"). First, in her Complaint, Plaintiff alleges that Defendants violated sections 24–1.1, 24–10, 24–12, and 24–14 of the North Carolina General Statutes by charging her usurious fees in connection with the closing of her loan. Second, Plaintiff contends that Defendants engaged in unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes. In response to Plaintiff's claims, National and Mego Trust 1997–4 first assert that all of Plaintiff's claims are barred by the applicable statute of limitations. Alternatively, National and Mego Trust 1997–4 maintain that the statutory sections upon which Plaintiff relies do not apply to Plaintiff's loan.[11]

11. Because the Court finds that both of Plaintiff's claims against National and Mego Trust 1997–4 are barred by the applicable statutes of limitations, the Court need not address Defendants' arguments that the statutory sections upon which Plaintiff relies do not apply to her loan. Nevertheless, the Court notes that Plaintiff's claims for unfair and deceptive trade practices against Mego Trust 1997–4 and some of Plaintiff's claims under the Interest Statutes for usurious fees against both National and Mego Trust 1997–4 would fail because the statutes are inapplicable in this instance. Specifically, Plaintiff could not maintain her claim for unfair and deceptive trade practices against Defendant Mego Trust 1997–4 because Plaintiff cannot demonstrate that Mego Trust 1997–4 engaged in an unfair or deceptive act. Plaintiff relies on the notion of assignee liability as established by HOEPA to assert that Mego Trust 1997–4 as an assignee is responsible for the acts of National, her loan's originator. However, Plaintiff's characterization of the reach of HOEPA's assignee liability is flawed because HOEPA does not create a new right or claim that would not

otherwise be cognizable under the law. Specifically, under North Carolina law, only the alleged perpetrator of a fraud, in this case National, and not a subsequent assignee, can be held liable for an unfair or deceptive trade practice. *Investors Title Ins. Co. v. Herzig*, 330 N.C. 681, 688, 413 S.E.2d 268, 271 (1992). Consequently, even though Plaintiff could possibly maintain an unfair and deceptive trade practices claim against National as the loan's originator were it not for the statute of limitations bar, Plaintiff could not maintain her unfair and deceptive trade practices claim against assignee Mego Trust 1997–4. Likewise, Plaintiff makes claims under sections 24–10, 24–12, and 24–14 of the Interest Statutes for usurious fees charged on her loan, which has a principal of $26,450. However, because sections 24–12 and 24–14 only apply to loans where the principal amount is less than $25,000, Plaintiff could not sustain her claims under such sections of Chapter 24 of the North Carolina General Statutes against either National or Mego Trust 1997–4. *See N.C. Gen.Stat. §§ 24–12 & 24–14.*

a. Statute of Limitations as a Bar to Interest Statute Claims

In support of their Motions to Dismiss, Defendants argue that Plaintiff's claims under the Interest Statutes are barred by the statute of limitations and that her UDTPA claim is likewise barred because of the four-year statute of limitations on UDTPA claims. (Br. of National Home Loan Corp. in Supp. of its Mot. to Dismiss Pl.'s Compl. at 2; Br. in Supp. of Defs.' Mot. to Dismiss at 7–9, 11–12.) Plaintiff responds by arguing that "[b]ecause the fees and costs charged by [National] were rolled into the loan made to Plaintiff by [National] and were part of the monthly payments made by Plaintiff, the statute of limitations accrues upon each payment made, not at the time the loan was initially made." (Pl.'s Mem. in Opp'n to Def.'s Mots. to Dismiss at 17.)

When it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss. *Miller v. Pac. Shore Funding,* 224 F.Supp.2d 977, 985 (D.Md. 2002); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990). In this action based on federal diversity jurisdiction, the Court applies the North Carolina statute of limitations, as well as North Carolina law construing it. *Wade v. Danek Med., Inc.,* 182 F.3d 281, 289 (4th Cir.1999).

The Court will first address the applicable statute of limitations for Sections 24–1 *et seq.* of the North Carolina General Statutes (hereinafter the "Interest Statutes"), which govern the interest and fees that can be charged in connection with a loan. Plaintiff alleges that she was charged illegal fees in excess of the amount allowed by N.C. Gen.Stat. §§ 24–10 and 24–14. Claims under the Interest Statutes are subject to a two-year statute of limitations. N.C. Gen.Stat. §§ 1–53(2), 1–53(3). North Carolina courts have held that the charging of such illegal fees is subject to the penalties for usury established by N.C. Gen.Stat. § 24–2. *Swindell v. Fed. Nat'l Mortgage Ass'n,* 330 N.C. 153, 157–78, 161, 409 S.E.2d 892, 895, 897 (1991) (applying the penalties of N.C. Gen. Stat. § 24–2 to a violation of N.C. Gen. Stat. § 24–10); *see also O.C. Merritt v. Knox,* 94 N.C.App. 340, 342, 380 S.E.2d 160, 162 (1989) (applying two year statute of limitations to a usurious loan). Thus, Plaintiff's claims under N.C. Gen.Stat. §§ 24–10 and 24–14 are subject to the two-year statute of limitations applicable to N.C. Gen.Stat. § 24–2. Plaintiff alleges that she was charged illegal fees and costs at closing on July 8, 1997. (Am. Compl.¶¶ 47–50.) She filed the instant action on November 26, 2001, over four years later. Therefore, on the face of the Amended Complaint, Plaintiff's claims under the Interest Statutes are barred by the two-year statute of limitations.

Plaintiff's argument that a new and actionable violation of the Interest Statutes occurs each month when she pays her mortgage bill does not salvage her claim from the statute of limitations bar, which in this instance precludes her claims for usurious fees. The plaintiff in *Miller* raised an identical argument and the court responded by noting that "[t]he apparently punctuated charging, receipt, and collection [of fees] are no more than the lingering, ongoing, continuing aspects of a unitary action initiated more than three years ago [at the closing of the loan]." 224 F.Supp.2d at 990. The court then observed that "[t]he wrong that continues over time, however, is different from a wrong which comes into existence or becomes known only after a passage of time." *Id.* (quotation omitted). The court also pointed out that "the alleged statutory violation, though continuing, is solitary

..." and that a solitary action is "distinguishable [from] wrongs that are perpetrated seriatim." *Id.* at 990 n. 6. Thus, the court concluded that:

> More than three years before filing his suit, at the closing of the loan, [the plaintiff] had sufficient knowledge of circumstances indicating he might have been harmed. The allegedly illegal fees were itemized on the face of the loan documents he signed on that date. The continued charging, collecting, and receiving of those fees by the lender or its assignees do not continuously renew the accrual of his cause of action.

*Id.* Hence, in *Miller*, the running of the statute of limitations for the plaintiff's cause of action began at the loan closing because the alleged wrong was not of a type that could become known only after a passage of time and because the alleged wrong, though continuing, arose from one unitary action.

In the present case, as in *Miller*, National and Mego Trust 1997–4 contend Plaintiff was on notice of the fees on the day of the loan closing.[12] (Br. of National Home Loan Corporation in Supp. of its Mot. to Dismiss Pl.'s Compl. at 4.) Therefore, all the "actions" Plaintiff attributes to National and its assignees are but one action which occurred at the closing of Plaintiff's loan rather than a series of wrongs perpetrated continually. Furthermore, because Plaintiff was on notice of the fees on the day of closing, this action was not the sort of wrong that Plaintiff could only become aware of after a passage of time. Thus, it is from the time of that action, that is, the charging of allegedly illegal fees and costs at the loan closing

on July 8, 1997, that the statute of limitations began to run. Consequently, because the statute of limitations ran out on July 8, 1999, and Plaintiff did not file suit until November 26, 2001, Plaintiff's claims under sections 24–1.1, 24–10, 24–12, 24–14 of the Interest Statutes against National and Mego Trust 1997–4 are barred.

### b. Statute of Limitations as a Bar to Unfair and Deceptive Trade Practices Claim

■ The Court will now address the applicable statute of limitations for Plaintiff's UDTPA claim. Section 75–16.2 of the North Carolina General Statutes establishes a four-year limitations period for claims under the UDTPA. A claim under the UDTPA accrues when the alleged violation occurs. *Jones v. Asheville Radiological Group, PA,* 134 N.C.App. 520, 527, 518 S.E.2d 528, 533 (1999), *rev'd in part on other grounds,* 351 N.C. 348, 524 S.E.2d 804 (2000) (citing *Hinson v. United Fin. Serv.,* 123 N.C.App. 469, 475, 473 S.E.2d 382, 387 (1996)). In other words, when a plaintiff has the "right to institute and maintain suit . . . ." *Barbee v. Atl. Marine Sales & Serv., Inc.,* 115 N.C.App. 641, 649, 446 S.E.2d 117, 122 (1994) (citing *Thurston Motor Lines v. General Motors Corp.,* 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962)).

Plaintiff argues that "[w]hen the claim for unfair and deceptive trade practices is based upon fraudulent conduct, as here, the cause of action arises at the time that the fraudulent conduct is discovered or should have been discovered with the exercise of due diligence." (Pl.'s Mem. in Opp'n to Def.'s Mots. to Dismiss at 20.)

---

**12.** Plaintiff's Complaint does not allege otherwise. Thus, although the Court in deciding a motion to dismiss must draw all reasonable inferences in favor of the non-moving party, this level of deference "do[es] not allow the court to assume that a plaintiff 'can prove facts that [she] has not alleged or that the

defendants have violated the . . . laws in ways that have not been alleged.'" *Davis v. Olin,* 886 F.Supp. 804, 808 (D.Kan.1995) (quoting *Assoc. Gen. Contractors of Cal. v. Cal. Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983) (footnote omitted)).

Plaintiff is correct that the question of whether she exercised due diligence in discovering the conduct is often a question of fact, "but this question may be determined as a matter of law where the plaintiff clearly had both capacity and opportunity to discover the fraud." *Wysong & Miles Co. v. Employers of Wausau,* 4 F.Supp.2d 421, 433 (M.D.N.C.1998). As North Carolina case law indicates, the phrase *"should have been discovered ..."* is to be emphasized. *Nash v. Motorola Communications and Elecs., Inc.,* 96 N.C.App. 329, 331, 385 S.E.2d 537, 538 (1989) (emphasis in original). Here, the fees and costs were disclosed at the time of the closing. (Br. of National Home Loan Corporation in Supp. of its Mot. to Dismiss Pl.'s Compl. at 4.) Thus, the date of closing, July 8, 1997, is when Plaintiff *"should have discovered"* that she may have a claim under the UDT-PA. As stated, she did not institute her action until November 26, 2001, after the applicable four-year statute of limitations had expired.

In summary, the Court has applied the applicable North Carolina statutes of limitations to both of Plaintiff's claims and finds, based on the face of the Amended Complaint, that the limitation periods have run. Thus, National and Mego Trust 1997-4 have properly asserted a statute of limitations defense through their Rule 12(b)(6) motions to dismiss and all outstanding Motions to Dismiss based upon the statute of limitations defense are therefore GRANTED.

### C. Motion to Withdraw as Counsel

On February 6, 2003, counsel for Defendant National filed a Motion to Withdraw as Counsel pursuant to Local Rule 83.1(e). Because the Court has granted all outstanding Motions to Dismiss, Plaintiff has no remaining claims against National. As such, the request to withdraw by counsel for National is moot and is therefore DISMISSED.

### III. CONCLUSION

Because Defendants can demonstrate that the amount in controversy exceeds $75,000, Defendants established that removal on the basis of diversity jurisdiction of the instant matter from state court was proper. Accordingly, Plaintiff's Motion to Remand [Document # 20] is DENIED.

For the reasons stated above, the Court has determined that Plaintiff lacks standing against all Defendants except for National and Mego Trust 1997-4. Accordingly, against all Defendants other than National and Mego Trust 1997-4, the Court lacks subject matter jurisdiction over Plaintiff's claims. Nevertheless, for the reasons stated above, the Court finds that Plaintiff's claims against National and Mego Trust 1997-4 are barred by the applicable statutes of limitations. Consequently, all outstanding Motions to Dismiss by Defendants[13] [Documents # 26, 28, 30, 32, 34, 41, 46, 82] are hereby GRANTED, and counsel for National's Motion to Withdraw as Counsel is DISMISSED as being moot.

An ORDER AND JUDGMENT consistent with this Memorandum Opinion will be entered contemporaneously herewith.

---

**13.** Defendant National Consumers Services Corp., LLC ("National Consumer Services") has not filed any pleadings in this matter and does not appear to be represented by counsel. Although the parties have represented to the Court that consent to removal was obtained from all Defendants, the Court can find no affidavit of service indicating that this Defendant received the summons sent to it via certified mail. Nevertheless, because all of the Court's foregoing findings and analysis are applicable to National Consumer Services, the Court's dismissal of the action is effective as to this Defendant as well.

*ORDER AND JUDGMENT*

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT Plaintiff Pamela J. Faircloth's Motion to Remand [Document # 20] is DENIED.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that all outstanding Motions to Dismiss [Documents # 26, 28, 30, 32 34, 41, 46, 82] are GRANTED.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that counsel for National's Motion to Withdraw as Counsel [Documents # 91] is DISMISSED as being moot.