AUDREY ANNE MIDKIFF, PLAINTIFF-APPELLANT v. JOHN MICHAEL COMPTON, DEFENDANT-APPELLEE

No. COA09-254

(Filed 18 May 2010)

**1. Appeal and Error— interlocutory order and appeal—discovery—physician-patient privilege—substantial right**

Although ordinarily discovery orders are not subject to immediate appeal, plaintiff's claim affected a substantial right and was immediately appealable because plaintiff was ordered to disclose matters she asserted were protected by the physician-patient privilege.

**2. Discovery— motion to compel—medical records—physician-patient privilege**

The trial court did not abuse its discretion in a personal injuries case arising out of an automobile accident by granting defendant's motion to compel discovery. Plaintiff impliedly waived her physician-patient privilege as to medical records causally or historically related to her "great pain of body and mind."

Judge STEELMAN concurring in result in separate opinion.

Appeal by Plaintiff from order entered 27 October 2008 by Judge Jack W. Jenkins in Superior Court, Carteret County. Heard in the Court of Appeals 30 September 2009.

*Wheatly, Wheatly, Weeks & Lupton, P.A., by Christopher L. Beacham and Stevenson L. Weeks, for Plaintiff-Appellant.*

*Hall, Rodgers, Gaylord, & Millikan, PLLC, by Dwight G. Rodgers, Jr. and Kathleen M. Millikan, for Defendant-Appellee.*

McGEE, Judge.

Audrey Anne Midkiff (Plaintiff) filed a complaint on 17 April 2008, seeking to recover damages for personal injuries she sustained when she was struck by a vehicle driven by John Michael Compton (Defendant). Plaintiff alleged that, while she was jogging on the shoulder of Little Deep Creek Road in Newport on or about 25 November 2006, Defendant's vehicle ran off the pavement and struck her, running over her right foot and injuring her lower leg, foot, and ankle. Plaintiff alleged that Defendant was negligent in causing the injuries cited above, which resulted in "great pain of body and mind."

Defendant filed an answer in which he admitted he drove his vehicle off the road but denied liability and alleged contributory negligence on the part of Plaintiff. Defendant served Plaintiff with interrogatories and requests for production of documents on 17 June 2008 requesting, *inter alia*:

1. The office records of each physician or other health care provider consulted by Plaintiff within the last ten (10) years, including without limitation any chiropractors or ancillary health care providers consulted during such period.

. . .

3. The admission and discharge summary for each hospitalization of Plaintiff within the last ten (10) years.

Plaintiff objected to Defendant's first and third request for production of documents on the grounds that they were "unduly broad, overly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that [they sought] medical records pertaining to parts of [Plaintiff's] body not injured in the subject collision." Plaintiff further asserted that the information sought was protected by the physician-patient privilege set forth under N.C. Gen. Stat. § 8-53 (2009). Without waiving the foregoing objection, Plaintiff

**MIDKIFF v. COMPTON**

[204 N.C. App. 21 (2010)]

provided three exhibits containing Plaintiff's medical records from Carteret General Hospital, Carteret Surgical Associates, and Carteret Foot & Ankle, which Plaintiff deemed related to the injuries alleged in her complaint.

Defendant filed a motion to dismiss Plaintiff's complaint, or in the alternative to compel discovery, on 11 September 2008. Through his motion, Defendant sought to compel discovery of all of Plaintiff's medical records for the past ten years, pursuant to Defendant's first and third discovery requests. Plaintiff filed a motion for a protective order on 16 September 2008. In the motion, Plaintiff sought to prevent discovery of the medical records in question, or in the alternative, request that the trial court review the records *in camera* to make a determination of which records were relevant to Plaintiff's claim and were, therefore, discoverable.

The trial court held a hearing on 29 September 2008 regarding the motions. At the hearing, Defendant argued that Plaintiff had waived her physician-patient privilege with respect to her entire medical history by filing lawsuit and "[bringing] her medical past into this arena." Defendant did not know what information could be found in the medical records sought but asserted the records were necessary to the preparation of his defense. The trial court indicated a reluctance to conduct an *in camera* review because the judge presiding at the eventual trial of the case would be in a better position to make the necessary determinations regarding relevance of the documents.

The trial court entered an order on 27 October 2008 ordering, *inter alia*:

1. That Defendants' [sic] Motion to Dismiss is DENIED;

2. That Defendants' [sic] Motion to Compel Discovery is ALLOWED and that the Plaintiff shall furnish Plaintiff's medical records from each medical provider seen by her for a period of five (5) years preceding the filing of this action and that said records shall be furnished to Defendants [sic] within 30 days of entry of this Order;

3. That Plaintiff's Motion for a Protective order is ALLOWED and that the release of Plaintiff's medical records shall be limited to Defendant's attorneys and their staff; and

4. That Plaintiff's Motion to Compel Discovery is DENIED.

Plaintiff appeals.

**MIDKIFF v. COMPTON**

[204 N.C. App. 21 (2010)]

## Timeliness of Appeal

[1] We first address the issue of whether this appeal is properly before us. Ordinarily, discovery orders are interlocutory and are not subject to immediate appeal. *Mims v. Wright*, 157 N.C. App. 339, 341, 578 S.E.2d 606, 608 (2003). Orders that are interlocutory are subject to immediate appeal when they affect a substantial right of a party. *Id.* " '[W]hen, as here, a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right. . . .' " *Id.* (quoting *Sharpe v. Worland*, 351 N.C. 159, 166, 522 S.E.2d 577, 581 (1999)). Because the trial court in the present case ordered Plaintiff to disclose matters she had asserted were protected by the physician-patient privilege, the trial court's order is immediately appealable and is properly before us. *See id.* (holding that appeal from a discovery order compelling disclosure of records to which physician-patient privilege had been asserted affected a substantial right and was, therefore, immediately appealable); *see also, Sharpe v. Worland*, 351 N.C. at 166, 522 S.E.2d at 581; *Lockwood v. McCaskill*, 261 N.C. 754, 757, 136 S.E.2d 67, 69 (1964) ("If and when Dr. Wright is required to testify concerning privileged matters at a deposition hearing, *eo instante* the statutory privilege is destroyed. This fact precludes dismissal of the appeal as fragmentary and premature.").

## Standard of Review

When reviewing a trial court's ruling on a discovery issue, our Court reviews the order of the trial court for an abuse of discretion. *Midgett v. Crystal Dawn Corp.*, 58 N.C. App. 734, 737, 294 S.E.2d 386, 388 (1982) (noting that ordinarily, orders relating to discovery are addressed to the discretion of the trial court and are to be reviewed for abuse of discretion). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

## Privilege

[2] Plaintiff first argues that the trial court abused its discretion by granting Defendant's motion to compel discovery because the documents sought were protected by physician-patient privilege. We disagree.

As a preliminary matter, we stress that, while the two are related, a determination of whether materials are subject to discovery is separate and independent of whether that evidence will later be admissible at trial. *See* N.C. Gen. Stat. § 1A-1, Rule 26 (2009); N.C. Gen. Stat. § 8C-1, Rules 402-03 (2009); *see also Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978) ("A determination that particular information is relevant for discovery is not conclusive of its admissibility as relevant evidence at trial."). The issue before us concerns N.C.G.S. § 1A-1, Rule 26 discovery of certain information and not an ultimate determination of relevance and admissibility at trial pursuant to N.C.G.S. § 1A-1, Rules 402-03.

N.C.G.S. § 1A-1, Rule 26 governs discovery and provides, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" N.C.G.S. § 1A-1, Rule 26(b)(1). N.C. Gen. Stat. § 8-53 (2009) creates a privilege for confidential communications between patients and their physicians and provides in pertinent part:

> No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon . . . . Confidential information obtained in medical records shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin. Any resident or presiding judge in the district, either at the trial or prior thereto, . . . may . . . compel disclosure if in his opinion disclosure is necessary to a proper administration of justice.

N.C.G.S. § 8-53.

Our Supreme Court has held that the physician-patient privilege is a qualified privilege and not an absolute one. *Sims v. Charlotte Liberty Mutual Insurance Co.*, 257 N.C. 32, 38, 123 S.E.2d 326, 331 (1962). The privilege belongs to the patient and may be waived by the patient either expressly or impliedly. *Capps v. Lynch*, 253 N.C. 18, 22-23, 116 S.E.2d 137, 141 (1960).

Defendant argues that Plaintiff waived her physician-patient privilege by filing this action and thereby placing her physical condition at issue. Defendant relies on *Jones v. Asheville Radiological Group, P.A.*, 134 N.C. App. 520, 518 S.E.2d 528 (1999) (Walker, J., dissenting

in part) (dissent adopted by 351 N.C. 348, 524 S.E.2d 804 (2000));
*Spangler v. Olchowski*, 187 N.C. App. 684, 654 S.E.2d 507 (2007) and
*Mims*. We find it helpful to consider the history of the physician-
patient privilege in light of these three cases and therefore conduct
the following review.

### Capps, Cates, and Jones

In reviewing the history of the physician-patient privilege and cir-
cumstances amounting to waiver thereof, the issue of waiver by
implication was addressed by our Supreme Court in 1960 in *Capps v.
Lynch*. The defendant in *Capps* called the plaintiff's treating physi-
cian as a witness. *Capps*, 253 N.C. at 20, 116 S.E.2d at 139. The trial
court did not allow the physician to testify concerning treatment
given to the plaintiff, stating to defendant's counsel that:

> This is a confidential matter between the doctor and the plain-
> tiff and if they have no objection to you using him for that, you
> may do so. If they object to it, I will not let him say anything about
> it. He has no right to say anything about it without the consent of
> the plaintiff.

*Id.* at 21, 116 S.E.2d at 140. On appeal, the defendant argued that the
plaintiff had waived the physician-patient privilege by testifying him-
self about the procedure performed by his doctor. *Id.* Our Supreme
Court noted the following with respect to waiver:

> A patient may surrender his privilege in a personal injury case by
> testifying to the nature and extent of his injuries and the exami-
> nation and treatment by the physician or surgeon. Whether the
> testimony of the patient amounts to a waiver of privilege depends
> upon the provisions of the applicable statute and the extent and
> ultimate materiality of the testimony given with respect to the
> nature, treatment and effect of the injury or ailment. The question
> of waiver is to be determined largely by the facts and circum-
> stances of the particular case on trial.

*Id.* at 23, 116 S.E.2d at 141. The Supreme Court ordered a new trial,
holding that, under the circumstances before it, the plaintiff had
indeed waived his privilege. *Id.* at 24-25, 116 S.E.2d at 142-43.

Our Supreme Court again addressed the question of implied
waiver in *Cates v. Wilson*, 321 N.C. 1, 361 S.E.2d 734 (1987). In *Cates*,
the Court noted that "[t]he principle underlying our decision in *Capps*
is that when a patient discloses, or permits disclosure of, information

gained by the physician during the physician-patient relationship, the rationale for the physician-patient privilege evaporates." *Id.* at 14, 361 S.E.2d at 742. The Court noted that *Capps* established a test for waiver, "concluding that the issue must be resolved 'largely by the facts and circumstances of the particular case on trial.' " *Id.* (quoting *Capps*, 253 N.C. at 23, 116 S.E.2d at 141). The *Cates* court further noted that certain situations "necessarily constitute implied waiver[,]" such as where the patient calls the physician to testify, or testifies himself, to the nature of the injuries or treatment. *Id.*

In *Jones*, our Court addressed the issue of waiver by implication. The plaintiff had previously filed a malpractice action against her gynecologist for his failure to diagnose her breast cancer. *Jones*, 134 N.C. App. at 522, 518 S.E.2d at 530. The plaintiff's malpractice complaint made references to a certain mammogram ordered by the gynecologist and performed by a radiological facility. *Id.* at 523, 518 S.E.2d at 530-31. During the course of the malpractice action, the gynecologist's malpractice insurer served requests for discovery on the plaintiff requesting, *inter alia*, "the medical records for all care and treatment received by plaintiff during the five-year period immediately preceding . . ." the malpractice action. *Id.*, 518 S.E.2d at 531. The plaintiff forwarded these records to the insurer as well as to her gynecologist. *Id.* The radiological facility subsequently released the plaintiff's records to a physician retained as an expert by the defendant gynecologist. *Id.* at 524, 518 S.E.2d at 531. During the malpractice trial, the plaintiff, the defendant gynecologist, and the gynecologist's experts "all testified in detail about the circumstances surrounding [the gynecologist's] alleged failure to diagnose plaintiff's breast cancer properly, including the mammogram procedure." *Id.* The jury returned a verdict in favor of the defendant gynecologist and our Court found no error. *Id.* at 524-25, 518 S.E.2d at 531.

The plaintiff then filed a second action, which was later appealed to our Court. In her second action, the plaintiff alleged, *inter alia*, medical malpractice claims and breach of fiduciary duty and confidentiality against the radiological facility and its employees. *Id.* at 525, 518 S.E.2d at 531. The trial court granted summary judgment to the defendants as to all claims and the issue before our Court was, in pertinent part, whether there existed "genuine issues of material fact . . . as to whether plaintiff waived the physician-patient privilege with regards to [the radiological facility's] unauthorized release of her films to [the gynecologist's expert in the first medical malpractice action]". *Id.*, 518 S.E.2d at 532.

The majority in *Jones* began its analysis by noting that:

The filing of a medical malpractice suit by a patient against her physician, however, constitutes a limited implied waiver of the physician-patient privilege to the extent the defendant-physician may reveal the patient's confidential information *contained in the defendant-physician's own records* to third parties where it is reasonably necessary to defend against the suit.

*Id.* at 527-28, 518 S.E.2d at 533 (emphasis in the original). The majority continued, holding as follows:

In this case, plaintiff's medical malpractice suit against [the gynecologist] constituted an implied waiver of her physician-patient privilege. [The gynecologist], as a defendant-physician in that suit, therefore was free to disclose to third parties *his own records* containing plaintiff's confidential information, to the extent he reasonably believed necessary in defending against plaintiff's action. In addition, plaintiff's filing of the underlying action against [the gynecologist] *combined with* her subsequent conduct during the course of the medical malpractice action impliedly waived her physician-patient privilege as to records relating to plaintiff's breast cancer which were *not* in [the gynecologist's] possession. It is the effect of plaintiff's waiver as to these records (*i.e.*, plaintiff's mammography films prepared by and in the possession of [the radiological facility]), which is at issue in this case.

*Id.* at 528, 518 S.E.2d at 533-34. The majority concluded that, because the records were not in the possession of a defendant to the first malpractice action, "even after plaintiff's waiver, the films only could be disclosed pursuant to statutorily authorized discovery procedures or pursuant to plaintiff's authorization." *Id.* at 529, 518 S.E.2d at 534. The majority then reversed summary judgment as to the plaintiff's claims regarding confidentiality and waiver of privilege. *Id.*

Dissenting in part, Judge Walker analyzed "when a patient effectively waives the privilege, and the extent to which the privilege is waived." *Id.* at 530, 518 S.E.2d at 535. Judge Walker discussed *Cates* and set forth the test for determining waiver as set out above. *Id.* at 530-31, 518 S.E.2d at 536. Judge Walker then cited the concurring opinion in *Cates*, wherein Justice Mitchell

stated it was time for the Court to recognize an exception to the physician-patient privilege which has already been adopted by

the majority of jurisdictions, the patient-litigant exception..That exception recognizes that when a patient files a medical malpractice action against her treating physician in which an essential part of the claim is the existence of a physical ailment, there should be a waiver of the privilege for all communications causally or historically related to that ailment. *However, the Court concluded that a waiver had occurred under the facts and therefore declined to adopt that exception.*

Here, when plaintiff filed the [malpractice] action, she directly put her medical condition at the time of the mammogram procedure at issue. *Thereafter, plaintiff's conduct during the course of the [malpractice] action clearly establishes a waiver of her physician-patient privilege.* . . . All of these facts and circumstances lead to the conclusion that plaintiff never manifested a desire to preserve her physician-patient privilege as to [the gynecologist].

*Id.* at 531-32, 518 S.E.2d at 535-36 (citations omitted, emphasis added). Judge Walker then stated that he found that the waiver as to the gynecologist was sufficient to preclude the plaintiff's confidentiality claims against the radiological facility. *Id.* at 532, 518 S.E.2d at 536. Judge Walker so concluded because, once the records were properly in the hands of the gynecologist pursuant to discovery, "no further discovery was necessary in order for [the gynecologist] to permit [his expert witness] to review these medical records and films." *Id.* Judge Walker then stated that he would hold that "the waiver of the privilege as to [the gynecologist] precludes any claims against [the radiological facility, its employee and the expert witness]." *Id.* On appeal, the Supreme Court reversed our Court's decision as to this issue, "[f]or the reasons stated in Judge Walker's dissenting opinion[.]" *Jones v. Asheville Radiological Group, P.A.*, 351 N.C. 348, 524 S.E.2d. 804 (2000).

### Jones' Progeny

Our Court has interpreted *Jones* in two pertinent opinions. First, in *Mims*, we addressed the issue of whether a defendant who responded to a plaintiff's allegations of negligence waived his physician-patient privilege. The trial court in *Mims* determined that, by simply driving a car, the defendant had waived her physician-patient privilege with respect to an action concerning the defendant's alleged negligence in driving the car. *Mims*, 157 N.C. App. at 342, 578 S.E.2d at 609. The plaintiff sought to introduce the defendant's medical records, and the trial court compelled discovery over the defendant's

assertion of physician-patient privilege, concluding that "[t]he [d]efendant, by driving, waived the physician-patient privilege, and the medical records of [d]efendant are relevant and material and may lead to the discovery of admissible or relevant evidence and should be produced in discovery[.]" *Id.* at 340, 578 S.E.2d at 608. Our Court held that this was error. *Id.* at 342, 587 S.E.2d at 609.

In determining whether the trial court erred, our Court reviewed the law as follows:

> In this case, there is absolutely no authority to support the trial court's conclusion that defendant waived the physician-patient privilege simply by driving. Instead, our courts have ruled that implied waivers occur where: the patient fails to object to testimony on the privileged matter; the patient herself calls the physician as a witness and examines him as to the patient's physical condition; or the patient testifies to the communication between herself and the physician. *Capps v. Lynch,* 253 N.C. 18, 23, 116 S.E.2d 137, 141 (1960). *Subsequent case law has also recognized an implied waiver where a patient by bringing an action, counterclaim, or defense directly placed her medical condition at issue. See Jones v. Asheville Radiological Grp.,* 134 N.C. App. 520, 531, 518 S.E.2d 528, 535 (1999) (Walker, J., dissenting in part) (citing *Cates v. Wilson,* 321 N.C. 1, 17, 361 S.E.2d 734, 744 (1987) (Mitchell, J., concurring in the result)), rev'd, 351 N.C. 348, 524 S.E.2d 804 (2000) (per curiam); *see also State v. Smith,* 347 N.C. 453, 461-62, 496 S.E.2d 357, 362 (1998) (where the defendant sought to suppress his statements to the police by arguing he had been suffering from controlled substance withdrawal symptoms, the defendant placed at issue his past state of mind, and the State properly sought to rebut this evidence with his medical records); *Laznovsky v. Laznovsky,* 357 Md. 586, 745 A.2d 1054, 1067 (2000) ("[w]hen a party-patient places a condition in issue by way of a claim, counterclaim, or affirmative defense, she waives the physician-patient privilege as to all matters causally or historically related to that condition, and information which would otherwise be protected from disclosure by the privilege then becomes subject to discovery"). Thus, had defendant, through her answer, placed her medical condition at issue, there would be an implied waiver of the physician-patient privilege; however, defendant simply denied plaintiff's allegation of negligence and, in the alternative, raised the defense of contributory negligence. As nothing in her answer or subsequent conduct during the course of dis-

covery opened the door to an inquiry into defendant's medical history, the trial court abused its discretion in concluding defendant had waived her privilege.

*Id.* at 342-43, 578 S.E.2d at 609 (emphasis added).

Citing *Mims,* our Court again addressed this issue in *Spangler v. Olchowski,* 187 N.C. App. 684, 654 S.E.2d 507 (2007). In *Spangler,* we held that "neither federal nor state law prohibited the trial court from ordering disclosure of the [information allegedly protected by the physician-patient privilege]." *Id.* at 693, 654 S.E.2d at 514. Determining whether the plaintiff had waived her privilege under North Carolina law, we conducted the following analysis:

> This patient-physician privilege is not absolute, however, and may be waived, either by express waiver or by waiver implied from the patient's conduct. *Mims v. Wright,* 157 N.C. App. 339, 342, 578 S.E.2d 606, 609 (2003). *We have recognized that a patient impliedly waives this privilege when she opens the door to her medical history by bringing an action, counterclaim, or defense that places her medical condition at issue. Id.* at 342-43, 578 S.E.2d at 609. Here, by bringing a claim for emotional distress, which alleges that defendants' actions caused decedent to withdraw from her college studies and caused an overall loss in decedent's enjoyment of life, we find that plaintiff has placed decedent's mental health and history of substance abuse at issue. Thus, plaintiff has impliedly waived the patient-physician privilege conferred by § 8-53 *et seq.*

*Id.* at 691, 654 S.E.2d at 513.

After a careful review of the opinions filed in *Jones,* and in light of the history of the physician-patient privilege, we question the *Mims* Court's restatement of the holding in *Jones.* We first address *State v. Smith,* the first of two other cases cited in *Mims* for the proposition that North Carolina has adopted the patient-litigant exception. In an opinion decided before *Jones,* our Supreme Court determined that a defendant had placed his mental health at issue by basing his motion to suppress evidence on an allegation that he was unwell while he gave certain contested statements. *State v. Smith,* 347 N.C. 453, 461-62, 496 S.E.2d 357, 362 (1998). The Supreme Court conducted the following analysis:

> Defendant sought to suppress statements he made to the police while in jail by arguing that he was suffering from controlled sub-

stance withdrawal symptoms and would therefore have been in no condition mentally to give statements to the police. Defendant thus placed at issue his state of mind during the time he was in jail, and the State properly sought to rebut that evidence with his medical records from jail. Defendant makes no argument, and we perceive no reason to believe, that the trial court abused its discretion in ordering the medical records disclosed. This assignment of error is overruled.

*Id.* We find this analysis inapposite as to the issue of whether a patient, by bringing an action against a defendant, thereby waives the physician-patient privilege as to medical records related to the alleged injuries.

We further note that the second case *Mims* cites, *Laznovsky v. Laznovsky*, 357 Md. 586, 745 A.2d 1054 (2000), is a Maryland case, and although another state's case law can be informative and persuasive authority, it is not sufficient to justify our Court in holding in contrast with our Supreme Court.

We now address our interpretation of *Jones* in *Mims.* In *Mims,* our one-sentence statement of the law for which *Jones* was offered was as follows: "Subsequent case law has also recognized an implied waiver where a patient by bringing an action, counterclaim, or defense directly placed her medical condition at issue." *Id.* at 342-43, 578 S.E.2d at 609. We believe support for this language can be found in only one paragraph of Judge Walker's dissent. That paragraph concerns the patient-litigant exception:

> In his concurring opinion in *Cates*, Justice (now Chief Justice) Mitchell stated it was time for the Court to recognize an exception to the physician-patient privilege which has already been adopted by the majority of jurisdictions, the patient-litigant exception. That exception recognizes that when a patient files a medical malpractice action against her treating physician in which an essential part of the claim is the existence of a physical ailment, there should be a waiver of the privilege for all communications causally or historically related to that ailment. *However, the Court concluded that a waiver had occurred under the facts and therefore declined to adopt that exception.*

*Jones,* 134 N.C. App. at 531, 518 S.E.2d at 535 (citations omitted, emphasis added). A close examination of this statement reveals that Judge Walker merely referenced Justice Mitchell's observations

on the law and himself observed that this course was not adopted by the Court. Continuing, Judge Walker's dissent applied the following analysis:

> Here, when plaintiff filed the [malpractice] action, she directly put her medical condition at the time of the mammogram procedure at issue. *Thereafter, plaintiff's conduct during the course of the [malpractice] action clearly establishes a waiver of her physician-patient privilege.* . . . All of these facts and circumstances lead to the conclusion that plaintiff never manifested a desire to preserve her physician-patient privilege as to [the gynecologist].

*Id.* at 531-32, 518 S.E.2d at 535-36. This analysis, based on facts and circumstances, clearly applies the *Capps* and *Cates* test for determining whether an implied waiver has occurred. *See Cates*, 321 N.C. at 14, 361 S.E.2d at 742 ("the issue must be resolved 'largely by the facts and circumstances of the particular case on trial.' " (quoting and discussing *Capps*, 253 N.C. at 23, 116 S.E.2d at 141)). Thus, we question the holdings of *Mims* and *Spangler* to the extent those opinions misinterpret *Jones.*

However, we are without authority to overrule opinions of our Court. *See In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Though we question the reasoning of those rulings, we are bound to follow *Mims* and *Spangler*. We therefore conduct the following analysis.

### Analysis

*Spangler* concerned a medical malpractice action against the defendants who performed a gastric bypass surgery on the decedent. *Spangler*, 187 N.C. App. at 687, 654 S.E.2d at 510. The decedent died of unrelated causes during the course of litigation. The decedent's father, as executor of decedent's estate, was substituted as the party-plaintiff. *Id.* The plaintiff alleged, *inter alia*, that complications due to the surgery forced the decedent to undergo a second procedure and caused the decedent to suffer "unnecessary conscious physical pain and emotional distress[.]" *Id.*

The defendants sought "discovery of all medical records for the ten-year period preceding [the date of the surgery], and medical

records up to the date of trial." *Id.*, 654 S.E.2d at 510-11. The defendants' motion to compel discovery was granted and the plaintiff did not appeal at that time, but several months later filed a motion for a protective order. *Id.* at 687-88, 654 S.E.2d at 511. In his motion for a protective order, the plaintiff sought to shorten the period for production of medical records by two days and to protect from disclosure records relating to substance abuse treatment obtained by the decedent. *Id.* at 688, 654 S.E.2d at 511.

The trial court denied the plaintiff's motion for a protective order, finding that:

A. [The decedent's] Estate is seeking damages for pain and suffering and emotional distress.

B. Mental suffering often results in substance abuse and records relating to substance abuse treatment may be relevant to mental pain.

C. In that the [p]laintiff has put before the Court a claim for emotional distress, all medical records which the [p]laintiff asserts are protected from disclosure under 42 CFR § 2.1[sic] *et seq.* and N.C.G.S. § 122C-52, *et seq.* are discoverable and shall be produced.

*Id.* The plaintiff appealed, contending in part that the trial court erred by ordering disclosure of the records of substance abuse treatment. *Id.* at 688-89, 654 S.E.2d at 511.

Our Court affirmed the trial court's order, holding that the plaintiff had waived his physician-patient privilege.

This patient-physician privilege is not absolute, however, and may be waived, either by express waiver or by waiver implied from the patient's conduct. We have recognized that a patient impliedly waives this privilege when she opens the door to her medical history by bringing an action, counterclaim, or defense that places her medical condition at issue. Here, by bringing a claim for emotional distress, which alleges that [the] defendants' actions caused decedent to withdraw from her college studies and caused an overall loss in decedent's enjoyment of life, we find that [the] plaintiff has placed decedent's mental health and history of substance abuse at issue. Thus, [the] plaintiff has impliedly waived the patient-physician privilege conferred by § 8-53 *et seq.*

*Id.* at 691, 654 S.E.2d 513 (internal citations omitted). We note, as interpreted under *Mims* and *Spangler*, our Supreme Court has limited this implied waiver to information "causally or historically related to the claims." *Jones*, 134 N.C. App. at 531, 518 S.E.2d at 535.

In the case before us, Plaintiff brought a personal injury action alleging, *inter alia*, that "Plaintiff has suffered and will continue to suffer great pain of body and mind[.]" Defendant sought medical records for the preceding ten years and, upon Plaintiff's motion, the trial court limited the production of Plaintiff's medical records to the preceding five years.

Plaintiff impliedly waived her physician-patient privilege as to medical records causally or historically related to her "great pain of body and mind." The trial court heard Defendant's arguments asserting possible medical reasons for Plaintiff's pain that predated the accident and thereafter reduced the scope of discovery from the requested ten years to five years. We review a trial court's decision concerning discovery matters for an abuse of discretion. *Midgett*, 58 N.C. App. at 737, 294 S.E.2d at 388. In light of *Spangler*, we can find no decision that is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. We therefore find no abuse of discretion.

### In Camera Review

Plaintiff argues that the privilege provided by N.C.G.S. § 8-53 is deemed destroyed *eo instante* the moment of compelled disclosure, and that the trial court should have conducted an *in camera* review of the records sought in order to prevent disclosure of irrelevant or causally unrelated evidence. We disagree. The decision to conduct *in camera* review rests " 'in the sound discretion of the trial court.' " *Spangler*, 187 N.C. App. at 693, 654 S.E.2d at 514 (quoting *Midgett*, 58 N.C. App. at 736, 294 S.E.2d at 387).

At the hearing on Plaintiff's motion for a protective order, the trial court made the following statement:

> Might be difficult for me to review these records in camera and make a snap judgment after a quick review as to whether something is relevant or not because I don't know what sort of evidence will be developed later, what kind of issues may come up.

. . .

But would it not make more sense to allow the motion to compel that the defendant has put forth with the caveat that when the matter comes to trial if there are concerns about maybe some diagnosis . . . that may not have anything to do with the case and as the case develops that's clearly not fair, let the trial judge be the judge of what will be divulged or not?

The trial court then compelled discovery of the records with the following limitations: the scope of the discovery was narrowed from the preceding ten years to the preceding five years and the records were subject to review only by Defendant's attorneys and their staff.

The procedure used by the trial court (1) allows Defendant to prepare a defense, (2) limits disclosure of potentially unrelated matters to Defendant's attorneys and their staff only, and (3) places the ultimate review of the relevance and causal relationship of the records in the hands of the judge at the trial on the merits, who is in the best position to make the determination of admissibility. In the present case, the trial court simply demurred from making an evidentiary ruling which the trial court stated can better be made by the presiding trial judge, who will have a better understanding of the issues in the case and will be in a better position to make such determinations. We cannot say this was a result "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. Therefore, we find no abuse of discretion.

### Failure to Provide that Disclosure was Necessary

Plaintiff also argues the trial court erred in compelling disclosure of her medical records without making a specific finding, or without making it clear in the record, so as to leave no question or doubt that the trial court was controlling the disclosure of the records. Plaintiff also argues the trial court was required to make it clear in the record that, in the trial court's opinion, the disclosure was necessary to a proper administration of justice. However, it is only when a trial court compels disclosure of privileged information that such findings are implicated. N.C.G.S. § 8-53; *Sims*, 257 N.C. at 38, 125 S.E.2d at 331. Because we have held that Plaintiff impliedly waived her privilege with respect to these records, we need not address this issue. Plaintiff's assignment of error is overruled.

Affirmed.

Judge JACKSON concurs.

Judge STEELMAN concurs in the result with a separate opinion.

STEELMAN, Judge concurs in separate opinion.

I fully concur in parts II and III of the majority opinion. As to part I, I concur in the result.

The majority focuses upon plaintiff's claim for pain and suffering to support the waiver of plaintiff's physician-patient privilege. This view is too narrow. By instituting an action for personal injury, regardless of whether there is a claim for pain and suffering, a plaintiff may impliedly waive the physician-patient privilege. The scope of that waiver must be determined by the allegations contained in the pleadings, and the nature and extent of the injury. *See Spangler v. Olchowski*, 187 N.C. App. 684, 691, 654 S.E.2d 507, 513 (2007) ("[A] patient impliedly waives this privilege when she opens the door to her medical history by bringing an action, counterclaim, or defense that places her medical condition at issue." (citation omitted)). A defendant is entitled to discover the condition of the plaintiff at the time of the alleged injury in order to properly evaluate whether the plaintiff's condition is the result of that injury, an aggravation of a pre-existing condition, or solely due to a pre-existing condition.

I discern no abuse of discretion on the part of the trial judge in the instant case. I concur with the majority that the fact that plaintiff has produced material in discovery is not determinative as to whether it will be admissible at trial.