An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1475

NORTH CAROLINA COURT OF APPEALS

Filed:  15 July 2014

CLIFFORD ROBERTS WHEELESS, III,
M.D.,
     Plaintiff

v.                                    Vance County
                                      No. 11 CVS 859
MARIA PARHAM MEDICAL CENTER, INC.,
     Defendant

Appeal by plaintiff from order entered 1 July 2013 by Judge James E. Hardin, Jr. in Vance County Superior Court.  Heard in the Court of Appeals 7 May 2014.

> *The Law Office of Colon & Associates, PLLC, by Arlene L. Velasquez-Colon; and Congdon Law, by Jeannette Griffith Congdon, for plaintiff-appellant.*

> *Womble Carlyle Sandridge & Rice, LLP, by James M. Powell and Theresa M. Sprain, for defendant-appellee.*

CALABRIA, Judge.

Clifford Roberts Wheeless, III, M.D. ("plaintiff") appeals from an order denying his motion for protective order and granting Maria Parham Medical Center, Inc.'s ("defendant") motion to compel.  We affirm.

I. Background

Plaintiff is an orthopedic surgeon who held active staff privileges with defendant until July 2006. In 2005, defendant's Medical Executive Committee ("MEC") conducted a peer review proceeding regarding plaintiff's clinical skills (the "2005 peer review"). In 2006, defendant initiated a separate peer review proceeding regarding allegations of plaintiff's violations of defendant's disruptive physician policy (the "2006 peer review"). Plaintiff requested a "fair hearing," which was scheduled to consider the allegations of plaintiff's disruptive behavior. Prior to the date of the fair hearing, the parties negotiated and entered into a Mediated Settlement Agreement ("MSA"). The terms of the MSA required, *inter alia*, that plaintiff deliver a request for the MEC to change his staff privileges from Active Staff to Consulting Staff, and that the MEC terminate without further action any and all pending or contemplated disciplinary actions against plaintiff.

In a letter dated August 2006, plaintiff alleged that defendant failed to honor his consulting privileges pursuant to the MSA, and requested that defendant take "whatever corrective steps appear to be necessary" to comply with the MSA. Plaintiff again notified defendant of an alleged failure to comply with the MSA in January 2007, alleging three specific instances

similar to those described in the August 2006 letter. In February 2009, plaintiff was contacted by the North Carolina Medical Board ("NCMB") regarding an anonymous complaint by "W. Blower" that had been submitted to the NCMB alleging inappropriate or disruptive behavior on plaintiff's part. The "W. Blower" allegations included references to incidents that were the subject of the 2005 and 2006 peer reviews and fair hearing.

On 25 August 2011, plaintiff filed a complaint against defendant alleging, *inter alia*, unfair and deceptive trade practices, breach of contract, fraud, civil conspiracy, tortious interference with contractual relations, invasion of privacy, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). In connection with his claims for breach of contract, civil conspiracy, tortious interference with contractual relations, and invasion of privacy, plaintiff alleged that he suffered emotional distress "as a direct and proximate result" of defendant's actions, and sought compensatory and punitive damages. After a hearing, the trial court granted summary judgment in favor of defendant regarding some of plaintiff's claims. The remaining claims progressed to discovery.

In response to one of defendant's interrogatories, plaintiff indicated that he had been treated by the North Carolina Physician Help Program ("NC PHP"), and that "specifics may be obtained from NC PHP program." Plaintiff did not assert any privilege but objected on the grounds that the interrogatory was overly broad and not reasonably calculated to lead to discovery of admissible evidence. On 30 April 2012, plaintiff voluntarily dismissed, without prejudice, his claims for IIED and NIED.

On 2 May 2012, plaintiff testified at a deposition that as part of his involvement with NC PHP, he participated in a program at the Physicians Renewal Center in Lawrence, Kansas ("PRC"), and had regular visits with psychologist George Wagaman, Ph.D. ("Dr. Wagaman") in Chapel Hill, North Carolina. After defendant sent plaintiff a formal request to execute releases for plaintiff's records from NC PHP, plaintiff claimed that his records were privileged because the records were requested for use by a medical review board pursuant to N.C. Gen. Stat. § 131E-95. Defendant subsequently filed a motion to compel. Plaintiff filed a motion for a protective order.

After a hearing on both motions, the trial court entered an order for *in camera* review of plaintiff's records from NC PHP,

Dr. Wagaman, and the PRC. After the *in camera* review, the trial court entered an order finding that "plaintiff's counsel reaffirmed that plaintiff is seeking, as alleged in his complaint, emotional distress damages in conjunction with the claims that remain pending in the lawsuit. As a result, Plaintiff has placed his mental health and history at issue in this lawsuit." The trial court concluded that plaintiff's medical records were "plainly relevant to his claims for emotional distress damages, and Plaintiff has waived any privilege that might otherwise shield his medical records from being discovered." The trial court then granted defendant's motion to compel. Plaintiff appeals.

Plaintiff argues that the trial court (1) abused its discretion in concluding that plaintiff waived his privilege, and (2) erred in concluding that the privilege afforded the NC PHP does not extend to other providers. Defendant filed a motion to dismiss plaintiff's appeal.

## II. Interlocutory Appeal / Motion to Dismiss

As an initial matter, defendant contends that plaintiff's appeal should be dismissed because there is substantial evidence to support the trial court's finding that plaintiff impliedly waived his privilege. We note that this appeal concerns an

order to compel discovery and this appeal is interlocutory.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, "orders compelling discovery of materials purportedly protected by the medical review privilege or work product doctrine are immediately reviewable on appeal despite their interlocutory nature." *Hammond v. Saini*, ___ N.C. App. ___, ___, 748 S.E.2d 585, 588 (2013). "[I]mmediate appeal is available from an interlocutory order or judgment which affects a substantial right." *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (quotation marks omitted). "Accordingly, when . . . a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right[.]" *Id*. at 166, 522 S.E.2d at 581. Because plaintiff's appeal concerns a claim of privilege, the trial court's order finding that plaintiff had waived his privilege affects a substantial right. Therefore, we deny defendant's motion to dismiss and address plaintiff's appeal.

## III. Waiver

We first address whether the trial court abused its discretion in concluding that plaintiff waived his privilege. Plaintiff specifically contends that because he dismissed his claims for IIED and NIED, his NC PHP records are irrelevant to the action. We disagree.

When reviewing a trial court's ruling on a discovery issue, this Court reviews the trial court's order for abuse of discretion. *Midkiff v. Compton*, 204 N.C. App. 21, 24, 693 S.E.2d 172, 175 (2010). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id*. (citation omitted).

"The facts and circumstances of a particular case determine whether a patient's conduct constitutes an implied waiver, and a patient impliedly waives his privilege when he does not object to requested disclosures of the privileged information." *Mosteller v. Stiltner*, ___ N.C. App. ___, ___, 727 S.E.2d 601, 603 (2012) (citation omitted). Our Courts have "also recognized an implied waiver where a patient by bringing an action, counterclaim, or defense directly placed her medical condition at issue." *Mims v. Wright*, 157 N.C. App. 339, 342-43, 578 S.E.2d 606, 609 (2003) (citations omitted).

In *Young v. Kimberly-Clark Corp.*, ___ N.C. App. ___, 724 S.E.2d 552 (2012), the plaintiff filed a complaint alleging, *inter alia*, "compensatory damages for emotional distress and/or pain and suffering." ___ N.C. App. at ___, 724 S.E.2d at 554. The defendant filed a motion to compel discovery on several issues, including the plaintiff's physical and mental health. *Id.* The trial court specifically found that the plaintiff had placed her mental and emotional health at issue both by asserting a claim for infliction of emotional distress and by seeking emotional distress damages in other causes of action. *Id.* at ___, 724 S.E.2d at 555. The trial court then allowed the defendant's motion to compel discovery regarding the plaintiff's physical and mental health for the five years prior to service of the requests. *Id.* This Court held that the trial court did not abuse its discretion in allowing discovery of the plaintiff's records of her physical and mental health. *Id.* at ___, 724 S.E.2d at 556.

Plaintiff cites *Iadanza v. Harper*, 169 N.C. App. 776, 611 S.E.2d 217 (2005) to support his assertion that his NC PHP records are irrelevant to his claims for emotional distress damages. In *Iadanza*, the plaintiff filed a complaint seeking compensatory and punitive damages for professional negligence,

breach of fiduciary duty, IIED, and NIED. 169 N.C. App. at 777, 611 S.E.2d at 220. The defendant moved for partial summary judgment on the issue of actual damages, and the trial court granted the defendant's motion. *Id*. at 778, 611 S.E.2d at 220. On appeal, the defendant argued that the plaintiff needed proof of severe emotional distress to prevail in her claim for pain and suffering damages. *Id*. at 780, 611 at 221. This Court rejected the defendant's argument, holding that a plaintiff need not prove the severe emotional distress as required by claims for IIED or NIED in order to prove pain and suffering damages. *Id*. (citation omitted). However, this Court also noted that a plaintiff must prove his cause of action before being entitled to all damages, including pain and suffering, that derive from the cause of action. *Id*.

Plaintiff concedes that he has the burden of proof of establishing emotional distress in pain and suffering damages. Plaintiff is also correct that damages for pain and suffering are recoverable without proof of *severe* emotional distress as required for claims of IIED and NIED. *Iadanza*, 169 N.C. App. at 780, 611 S.E.2d at 221-22. Plaintiff contends that his three week participation in the program at PRC and his regular visits with Dr. Wagaman did not constitute treatment, that he has never

been diagnosed with a mental or emotional disorder, and that there are no supporting documents. However, plaintiff appears to misunderstand the nature of defendant's request, and his assertions, that his medical records are irrelevant to the action because he has not been diagnosed with a *severe* emotional condition, are misplaced. Defendant does not contend that plaintiff must prove *severe* emotional distress. Instead, defendant's discovery requests merely sought proof of plaintiff's alleged damages as related to the alleged emotional distress.

In the instant case, plaintiff specifically claimed damages related to emotional distress, alleging as part of several causes of action that "[a]s a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered, and continues to suffer, significant harm to his reputation, emotional distress, economic loss and other damages." In addition, plaintiff specifically alleged in his claim for civil conspiracy that defendant's "actions and conduct in this conspiracy were designed to bring great harm and damage to Plaintiff by causing damage: to his reputation; severe economic and financial loss; severe emotional distress, and loss of Plaintiff's medical license." Defendant sought copies of

plaintiff's records from NC PHP, PRC, and from Dr. Wagaman, a professional psychologist. Plaintiff did not dispute that he had participated in the PRC program or that he had visited Dr. Wagaman on several occasions. Plaintiff did not assert any type of privilege in his answers to discovery until defendant requested releases for these records.

At the hearing, the trial court reviewed plaintiff's complaint and voluntary dismissal of his claims for IIED and NIED, plaintiff's answers to the pertinent interrogatories, and excerpts from plaintiff's deposition in which he answered questions regarding the names of his providers and the lengths of his participation in the programs. After hearing counsel's arguments regarding reasons plaintiff's records were not discoverable, the trial court also ordered an *in camera* review of the records. Subsequent to the *in camera* review, the trial court entered an order finding that plaintiff was indeed seeking emotional distress damages in conjunction with his remaining claims, and that as a result plaintiff had placed his mental health and history at issue. The trial court also found that plaintiff had failed to assert any privilege in his responses to defendant's interrogatories. The trial court then concluded that because plaintiff had placed his mental health and history

at issue by virtue of his claims for emotional distress damages, his medical records were "plainly relevant to his claims for emotional distress damages, and Plaintiff has waived any privilege that might otherwise shield his medical records from being discovered," pursuant to both *Young* and *Mims*. The trial court also noted plaintiff's failure to assert any privilege, concluding that any claim of privilege had been waived on that ground, as well. The record indicates that the trial court considered evidence and arguments from both parties, and conducted an *in camera* review of the documents before entering its order. Therefore, the trial court did not abuse its discretion in concluding that plaintiff had waived his privilege.

Plaintiff also argues that the trial court erred in concluding that the statutory privilege afforded to the NC PHP does not extend to other providers. However, because the trial court did not abuse its discretion in concluding that plaintiff had waived any claim of privilege, we need not address this argument.

## IV. Conclusion

Plaintiff asserts that the trial court's findings were unsupported by the evidence, and that the court's conclusions

were not supported by the findings. However, the record indicates otherwise. We find no evidence that the trial court's order was "manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision." *Midkiff*, 204 N.C. App. at 24, 693 S.E.2d at 175. Therefore, we affirm the order of the trial court.

Affirmed.

Judges BRYANT and GEER concur.

Report per Rule 30(e).