An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-537

Filed 18 March 2026

North Carolina Industrial Commission I.C. No. 20-033144

OBEDINA ACOSTA VALENZUELA, Employee, Plaintiff,

v.

DELHAIZE AMERICA, LLC d/b/a FOOD LION, LLC, Employer, SELF-INSURED (RETAIL BUSINESS SERVICES, LLC, Third Party Administrator), Defendant.

Appeal by plaintiff from opinion and award entered 7 February 2025 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 15 January 2026.

*Barba Law Firm, PLLC, by Milton E. Barba, for plaintiff-appellant.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, for defendant-appellee.*

DILLON, Chief Judge.

Plaintiff Obedina Acosta Valenzuela appeals from opinion and award entered on 7 February 2025 by the North Carolina Industrial Commission in which the Commission concluded: (1) Plaintiff was not entitled to a comprehensive second opinion evaluation pursuant to G.S. 97-25(b)–(c); (2) Plaintiff was not entitled to temporary partial disability benefits for the ten weeks she worked reduced hours; (3)

Plaintiff's $600.00 fee to obtain her wage and employment records was not an undue burden or expense; and (4) Plaintiff was not entitled to fees and costs under G.S. 97-88.1 based on Defendant Food Lion, LLC's defense of Plaintiff's claim. For the reasons below, we affirm.

## I.     Background

While working as a part-time Deli Bakery Associate for Defendant, Plaintiff "hit [ ] the container that had the oil and the edge [ ] cut [ ] into [her] foot." Plaintiff sustained a laceration on her lower right leg ("compensable injury"). Plaintiff's compensable injury measured approximately five centimeters in length, two centimeters in depth, and Betsy Johnson Hospital ("BJH") sutured Plaintiff's laceration the day of the injury. BJH instructed Plaintiff to remain non-weight bearing for the next three to five days. Five days later, on 21 August 2020, Plaintiff returned to work with Defendant in the same role.

Following Plaintiff's 16 August 2020 compensable injury, Plaintiff visited various doctors and health care providers over the course of the next few months. On a visit to Coats Medical Services two days after Plaintiff's compensable injury, a Dr. Breen did not assign Plaintiff any work restrictions.

In medical records dated 5 November 2020 through 19 December 2022, Plaintiff did not complain about the compensable injury. On 20 December 2022, a physical exam of Plaintiff's lower right extremity presented normal.

Approximately two months following the December visit, on 18 February 2022,

Plaintiff filed a Form 18 indicating she sustained an injury while working with Defendant. On 21 June 2022, Plaintiff voluntarily resigned from Defendant. On 14 July 2022, Defendant filed a Form 60 accepting compensability for a 16 August 2020 compensable injury of a "right lower leg laceration." In September 2022, Plaintiff began working part-time at Carolina Coastal Community College ("CCCC") as a second language instructor.[1]

On 10 July 2023, Plaintiff underwent an independent medical examination ("IME") at the request of her Worker's Compensation carrier with Brian Szura, MD, at UNC Cary Orthopedics and Sports Medicine Specialists. Dr. Szura placed Plaintiff at maximum medical improvement ("MMI") for the compensable injury and provided Plaintiff with a three percent permanent partial impairment ("PPI") rating. Dr. Szura did not assign work restrictions. The Commission awarded Plaintiff $940.86 for six weeks of compensation for the three percent PPI.

During the time Plaintiff worked part-time with Defendant, she also worked full-time at McDonald's. At the time Plaintiff voluntarily resigned with Defendant she continued working full-time at McDonald's.

## II. Analysis

Plaintiff presents four arguments on appeal. We address each in turn.

---

[1] Plaintiff testified she worked at a local bar and grille as well as a Cookout during the period from when she left Defendant to when she started at CCCC. However, the Commission did not make findings regarding such employment, thus, it is omitted herein.

A. General Statute 97-25(b)–(c)

Plaintiff argues the Commission erred by denying her request for a second opinion examination pursuant to G.S. 97-25(b) because during the 2023 IME visit Dr. Szura, he discussed "desensitization techniques," and this discussion shows a second opinion is reasonably necessary. We disagree and affirm the Commission's determination.

General Statute 97-25 "leaves the approval of a physician within the discretion of the Commission, and its determination may only be reversed upon finding a manifest abuse of discretion." *Franklin v. Broyhill Furniture Indus.*, 123 N.C. App. 200, 207–08 (1996) (citing *White v. White*, 312 N.C. 770, 777 (1985)). The North Carolina legislature updated the statute in 2011 granting initial discretion to grant or deny a second opinion evaluation to a worker's employer.[2] *See* N.C.G.S. 97-25(b) (2023) ("[T]he *employer may agree* to authorize and pay for a second opinion examination[.]") (emphasis added).

Presently, General Statute 97-25(b) requires a written request from employee to employer for employee to obtain a second opinion examination. *Id.* If within fourteen days following the employee's request, the employer denies the request, or the employer and employee cannot agree on a health care provider to provide the second opinion examination, the employee may *then* request the Commission to order

---

[2] *See* An Act Protecting and Putting North Carolina Back to Work by Reforming the Workers' Compensation Act, S.L. 2011-287, § 6, 2011 N.C. Sess. Laws, 1087, 1089.

a second opinion examination. *Id.*

Here, the Commission denied Plaintiff's request to supplement the record with a July 2023 email from Plaintiff's counsel to Defendant's counsel regarding a second opinion evaluation. The Commission declined to decide on Plaintiff's second opinion request because it found Plaintiff failed to put such request properly before the deputy commissioner.

The Commission then stated even assuming Plaintiff properly put the second opinion request before the Commission, the Commission found a lack of sufficient evidence to establish that Plaintiff submitted a written request to Defendant, or that Defendant denied a request, as required by G.S. 97-25(b). The Commission then concluded "Plaintiff failed to show compliance with the parameters of [G.S.] 97-25(b) to properly request a second opinion evaluation . . . the Commission concludes [ ] Plaintiff has not shown sufficient or good grounds to order a second opinion evaluation[.]"

We conclude the Commission did not abuse its discretion in denying Plaintiff's second opinion examination because there is no written request from employee to employer or to Commission requesting such. Alternatively, we conclude the Commission did not abuse its discretion in denying Plaintiff's request for a second opinion.

Related to Plaintiff's G.S. 97-25(b) argument, Plaintiff contends the Commission erred by denying Plaintiff's request to change her treating physician

under G.S. 97-25(c). We conclude the Commission did not err in denying Plaintiff's request based on its determination that Plaintiff failed to meet her burden that a change in her physician could cure, provide relief, or lessen the compensable injury. *See* N.C.G.S. § 97-25(c) (2023).

A change in a treating physician or treatment is subject to the Industrial Commission's approval and "the employee must show by *a preponderance of the evidence* that the change is reasonably necessary to effect a cure, provide relief, or lessen the period of disability." *Id.* (Emphasis added).

Here, the Commission found Plaintiff did not raise the G.S. 97-25(c) issue before the deputy commissioner and declined to render a decision on the issue. Nonetheless, the Commission found "[b]ased on the preponderance of the evidence in view of the entire record . . . Plaintiff has not shown, what, if any, additional treatment for her right leg injury is needed." Specifically, the Commission found Plaintiff's medical records devoid of any reference to a right leg injury from 5 November 2020 through 23 July 2023. The Commission found during the 10 July 2023 IME visit, Dr. Szura stated "[i]t is unlikely that further intervention will be of a significant benefit" and he placed Plaintiff at MMI with a three percent PPI rating for the compensable injury.

These findings are supported by record evidence. Plaintiff testified no medical

provider assigned "work restrictions"[3] since her initial 16 August 2020 visit to BJH. Second, Plaintiff admitted that a 20 December 2022 exam of her right leg presented normal. Third, Plaintiff's testimony reflected her understanding that Dr. Szura did not provide her work restrictions in July 2023. Fourth, Dr. Szura's July 2023 IME report confirmed no work restrictions for Plaintiff, she reached MMI, and "further intervention" would be unlikely to improve Plaintiff's situation.

Accordingly, the Commission determined Plaintiff "has not shown a change in medical providers could effect a cure, provide relief, or lessen Plaintiff's period of disability – especially considering she also lacks permanent work restrictions." Thus, we conclude Plaintiff failed to show by a preponderance of the evidence that a physician change was necessary and the Commission's did not err in denying Plaintiff's alleged request to change medical provider(s) or treatment.

### B. Disability Compensation

Plaintiff contends the Commission's denial of temporary partial disability ("TPD") benefits under G.S. 97-29 for the ten weeks Plaintiff worked reduced hours is error because she established a loss of wage-earning capacity. For the reasons below, the Commission's findings are supported by competent evidence, and it properly concluded Plaintiff failed to present evidence supporting a diminished wage-

---

[3] BJH told Plaintiff to remain non-weight bearing for three to five days which the Commission did not categorize as a work restriction in its finding. However, during cross-examination of Plaintiff, Defendant's counsel characterized these three to five days as a work restriction.

earning capacity because of the compensable injury.

Appellate review of the Commission's opinion and award considers "whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Group*, 362 N.C. 657, 660 (2008) (citation omitted). Our analysis "goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433–34 (1965). *See Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 108 (2000) (citation omitted) ("The determination of whether a disability exists is a conclusion of law that must be based upon findings of fact supported by competent evidence."). Conclusions of law are reviewed de novo. *Lewis v. Sonoco Prods. Co.*, 137 N.C. App. 61, 68 (2000) (citation omitted).

To support a conclusion of disability, the Commission must find three elements:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that [plaintiff's] incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595 (1982) (citation omitted).

The claimant bears the burden of proving the existence and extent of her disability by meeting each of those three elements. *Clark v. Wal-Mart*, 360 N.C. 41,

43 (2005) (citation omitted). A claimant may prove the first two elements of *Hilliard* by any of the four methods in *Russell v. Lowes Prod. Distrib.*:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

108 N.C. App 762, 765 (1993) (cleaned up). These four methods are not an exhaustive list, nor statutory, of how to establish the first two elements of *Hilliard*. *Medlin v. Weaver Cooke Constr., LLC*, 367 N.C. 414, 422 (2014). As for the third element of *Hilliard*, also known as the statutory causation element, a claimant proves such "by proving that his inability to obtain equally well-paying work is because of his work-related injury." *Id.*; *see also* N.C.G.S. § 97-2(9) (2023) (defining disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment[ ]").

However, "the fact that an employee is capable of performing employment tendered by the employer [post-injury] is not, as a matter of law, an indication of plaintiff's ability to earn wages." *Saums v. Raleigh Cmty. Hosp.*, 346 N.C. 760, 764 (1997) (citation omitted). A plaintiff's ability to work in the same position must be

considered in conjunction with whether the employer has modified the position to accommodate the employee's injury, and thus, whether such post-injury position would be "ordinarily available in the competitive job market." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 438 (1986). The true test is whether "the wage that would have been paid in the open market under normal employment conditions [is being paid] to [the employee] as injured." *Id.* at 437. (Citation and emphasis omitted).

The Commission found Plaintiff returned to work with Defendant five days after the compensable injury. This finding is supported by Plaintiff's testimony and Defendant's Worker's Compensation Initial Report. The Commission also found the absence of any post-injury wage records indicating Plaintiff worked less hours or earned less wages with Defendant following the compensable injury. Additionally, following the compensable injury, the Commission found Plaintiff returned to/continued her role at McDonald's. Plaintiff also continued working for Defendant for nearly a year after the compensable injury, until 22 June 2021. The Commission found Plaintiff voluntarily resigned from her position at Defendant to find a better job.[4] The Commission based this finding on Plaintiff's testimony, as well as the testimony of Defendant's store manager who stated, "[Plaintiff] quit because she got

---

[4] Defendant does not label Plaintiff's resignation as a voluntary refusal of suitable employment. *But see White v. Weyerhaeuser Co.*, 167 N.C. App. 658, 665 (2005) (citation omitted) (stating when termination is voluntary and "employer meets its burden of showing that a plaintiff unjustifiably refused suitable employment, then the employee is not entitled to further benefits under . . . G.S. 97-30 [partial incapacity]." *See also* N.C.G.S. § 97-32 (2023). We do not consider this issue. N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

full time at [McDonald's] . . . we tried to get her to stay but we did not have a full time opening at that time."[5]

Here, Plaintiff cannot establish the third, statutory *Hilliard* element proving she is earning less or suffers from a diminished wage capacity because of her compensable injury. First, record evidence indicates Plaintiff is making *more* after her work injury as compared to prior to the work injury. Second, the Commission's findings are supported by record evidence showing Plaintiff continued working with Defendant *and* McDonald's following the injury and there is no indication either employer altered the position due to Plaintiff's compensable injury. Third, Plaintiff never received formal work restrictions, rather, Plaintiff's only limitation was to remain non-weight bearing for three to five days following the compensable injury.[6]

And while "[t]he fact that an employee is capable of performing employment tendered by the employer [post-injury] is not, as a matter of law, an indication of plaintiff's ability to earn wages," *Saums*, 346 N.C. at 764, here, Plaintiff did so in the same position with no work restrictions. Therefore, the record evidence is competent to support the Commission's findings indicating Plaintiff is not entitled to TPD because she cannot establish diminished wage-earning capacity because of the

---

[5] The Commission recited Plaintiff's testimony regarding her resignation with Defendant due to pain. However, the Commission evidently did not find this testimony convincing. *See Branham v. Panel Co.*, 223 N.C. 233, 236 (1943) ("The [Workmen's Compensation Act] provides no compensation for physical pain or discomfort. It is limited to the loss of ability to earn.").

[6] *See also Cross v. Falk Integrated Techs., Inc.*, 190 N.C. App. 274, 281 (2008) (reasoning in part the lack of work restrictions following a compensable work injury supports a conclusion under the non-statutory *Russell* factors that a plaintiff is not disabled).

compensable injury. As such, the Commission's conclusion of law indicating "Plaintiff has not presented sufficient evidence otherwise showing she suffered a reduced wage-earning capacity . . . as a result of her [compensable injury]" is supported by the findings.

### C. Wage Record Request

Plaintiff argues Defendant's request of her wage and employment records from McDonald's—Plaintiff's other employer around the time her compensable injury occurred—constituted an undue burden or expense because Plaintiff could not afford her diabetes medicine and the wage and employment records request cost four times Plaintiff's compensation rate. We conclude the Commission did not abuse its discretion in concluding this request was not an undue burden or expense.

Failure to produce a wage record as requested by an opposing party is a discovery issue subject to abuse of discretion review. *Midkiff v. Compton*, 204 N.C. App. 21, 24 (2010) (citation omitted); *see also Stanback v. Stanback*, 287 N.C. 448, 459 (1975). An abuse of discretion is present "where [the Commission's] ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Midkiff*, 204 N.C. App. at 24 (citing *State v. Hennis*, 323 N.C. 279, 285 (1988)).

Plaintiff indicated it would have cost her $600.00 to obtain her wage records. Plaintiff based this cost on a statement from "Christy Oswald" at McDonald's who told Plaintiff the cost would be $5.00/paystub for a total of around $600.00. Ms.

Oswald's statement is Plaintiff's sole reference regarding the validity of the cost to obtain the wage records. Plaintiff asserts she did not deny Defendant's discovery request to submit the wage records, rather, the cost of such effectively prohibited her from complying with Defendant's request. A special deputy commissioner ordered Plaintiff to produce the wage records and Plaintiff thereafter requested a hearing to prove her entitlement to disability benefits.

Rule 26(c) of the North Carolina Rules of Civil Procedure permit a party to seek a protective order as a safeguard "from unreasonable annoyance, embarrassment, oppression, or undue burden or expense[.]" N.C.G.S. § 1A-1, Rule 26(c). In consideration of whether a request is an undue burden or expense a "trial court must consider the specific discovery sought and the factual circumstances of the party from whom discovery is sought." *In re Accutane Litigation*, 233 N.C. App. 319, 323 (2014) (citations omitted).

Here, the Commission found Defendant's request of "Plaintiff's post-injury wage records from McDonald's did not constitute an undue burden or expense given the issues in this case[,]" nor that Plaintiff provided "sufficient evidence establishing the cost to obtain her wage records from McDonald's." Further, the Commission concluded such request did not constitute an undue burden or expense because Plaintiff's claim for TPD benefits "directly pertain[ed] to [Plaintiff's] post-injury wage-earning capacity, and any discovery request seeking records of [Plaintiff's] earnings after the injury is information necessary for litigation of [Plaintiff's] claim[.]"

This Court concludes the Commission did not abuse its discretion in concluding the wage record expense of $600.00 did not constitute an undue burden or expense because the Commission's request of the wage records directly related to Plaintiff's claim for TPD benefits and Plaintiff did not present evidence beyond what a Ms. Oswald stated regarding the cost to produce the wage records.

### D.  Defense of Claim

Plaintiff argues she is entitled to recover her attorney's fees, contending Defendant's defense is unreasonable.  *See* N.C.G.S. § 97-88.1 (2023).  We conclude the Commission did not abuse its discretion in denying Plaintiff attorney's fees.

The Industrial Commission's decision to award attorney's fees is subject to an abuse of discretion review.  *Taylor v. J.P. Stevens Co.*, 307 N.C. 392, 394 (1983); *see also* N.C.G.S. § 97-88.1 (2023) (emphasis added) ("If the Industrial Commission shall determine that any hearing has been brought . . . without reasonable ground, it *may assess* . . . reasonable [attorney's fees].").  "The decision whether to award or deny attorney's fees *rests within the sound discretion* of the Commission and will not be overturned absent a showing that the decision was manifestly unsupported by reason." *Thompson v. Fed. Express*, 175 N.C. App. 564, 570 (2006) (emphasis added) (citation omitted).  The test is whether the litigation is reasonable as opposed to being "stubborn, unfounded litigiousness[.]" *Sparks v. Mountain Breeze Rest. & Fish House, Inc.*, 55 N.C. App. 663, 664 (1982).  A reasonable defense is one grounded in "sound legal principles" whereas stubborn or unfounded litigation has been characterized as

an insurer appealing to harass "an economically feeble employee[.]" *Taylor*, 307 N.C. at 398.

Here, Plaintiff does not point at a specific aspect of Defendant's defense as unreasonable. Rather, Plaintiff recites a timeline of her claim against Defendant, raises the three arguments above, and realleges the facts surrounding Plaintiff's exit from Defendant. The Commission concluded "Plaintiff has not shown that Defendant's defense of this claim was without reasonable grounds. Accordingly, Plaintiff is not entitled to attorney['s] fees and costs." Based on these findings and conclusions, the Commission did not abuse its discretion because Defendant's defense of each claim rested on good faith arguments. *See West v. Hoyle's Tire & Axle, LLC*, 277 N.C. App. 196, 204 (2021).

### III. Conclusion

This Court affirms the Commission's decision and award.

AFFIRMED.

Judges HAMPSON and MURRY concur.

Report per Rule 30(e).